UNITED STATES *v.* URSERY

No. 95–345.  Argued April 17, 1996—Decided June 24, 1996*

*Together with No. 95–346, *United States* v. *$405,089.23 in United States Currency et al.*, on certiorari to the United States Court of Appeals for the Ninth Circuit.

268

REHNQUIST, C. J., delivered the opinion of the Court, in which O'CON-
NOR, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined.   KENNEDY,
J., filed a concurring opinion, *post*, p. 292.   SCALIA, J., filed an opinion
concurring in the judgment, in which THOMAS, J., joined, *post*, p. 297.
STEVENS, J., filed an opinion concurring in the judgment in part and dis-
senting in part, *post*, p. 297.

*Michael R. Dreeben* argued the cause for the United
States in both cases.   With him on the briefs were *Solicitor
General Days, Acting Assistant Attorney General Keeney,
Miguel A. Estrada, Kathleen A. Felton,* and *Joseph Doug-
las Wilson.*

*Jeffry K. Finer* argued the cause for respondents in No.
95–346.   With him on the briefs were *Jeffrey Steinborn,
David Michael,* and *E. E. Edwards III.*

*Lawrence S. Robbins* argued the cause for respondent in
No. 95–345.   With him on the brief were *Donald M. Falk*
and *Lawrence J. Emery,* by appointment of the Court, 516
U. S. 1109.†

---

†Briefs of *amici curiae* urging reversal were filed for the State of Con-
necticut et al. by *John M. Bailey,* Chief State's Attorney of Connecticut,
and *Mary H. Lesser,* Assistant State's Attorney, and by the Attorneys
General for their respective jurisdictions as follows: *Jeff Sessions* of
Alabama, *Bruce M. Botelho* of Alaska, *Grant Woods* of Arizona, *Winston
Bryant* of Arkansas, *Daniel E. Lungren* of California, *Gale A. Norton* of
Colorado, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Flor-
ida, *Michael J. Bowers* of Georgia, *Margery S. Bronster* of Hawaii, *Alan
G. Lance* of Idaho, *Jim Ryan* of Illinois, *Pamela Carter* of Indiana, *Tom
Miller* of Iowa, *Carla J. Stovall* of Kansas, *A. B. Chandler III* of Kentucky,

270

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In separate cases, the United States Court of Appeals for the Sixth Circuit and the United States Court of Appeals for the Ninth Circuit held that the Double Jeopardy Clause prohibits the Government from both punishing a defendant for a criminal offense and forfeiting his property for that same offense in a separate civil proceeding. We consolidated those cases for our review, and now reverse. These civil forfeitures (and civil forfeitures generally), we hold, do

*Richard P. Ieyoub* of Louisiana, *Andrew Ketterer* of Maine, *J. Joseph Curran, Jr.,* of Maryland, *Scott Harshbarger* of Massachusetts, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Mike Moore* of Mississippi, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Jeffrey R. Howard* of New Hampshire, *Deborah T. Poritz* of New Jersey, *Tom Udall* of New Mexico, *Dennis C. Vacco* of New York, *Michael F. Easley* of North Carolina, *Heidi Heitkamp* of North Dakota, *Betty D. Montgomery* of Ohio, *Drew Edmondson* of Oklahoma, *Theodore R. Kulongoski* of Oregon, *Thomas W. Corbett, Jr.,* of Pennsylvania, *Pedro R. Pierluisi* of Puerto Rico, *Jeffrey B. Pine* of Rhode Island, *Charles Molony Condon* of South Carolina, *Mark W. Barnett* of South Dakota, *Charles W. Burson* of Tennessee, *Dan Morales* of Texas, *Jan Graham* of Utah, *Jeffrey L. Amestoy* of Vermont, *James S. Gilmore III* of Virginia, *Christine O. Gregoire* of Washington, *James E. Doyle* of Wisconsin, and *William U. Hill* of Wyoming; for the County of San Bernardino, California, et al. by *Dennis L. Stout, Dee R. Edgeworth, Michael J. Yraceburn, Phillip R. Urie,* and *Armando G. Cuellar, Jr.;* for the Cook County State's Attorney's Office et al. by *Jack O'Malley, Renee Goldfarb,* and *Janet Powers Doyle;* and for the Thirty-nine Counties of the State of Washington by *Norm Maleng, Barbara A. Mack, David Bruneau, Arthur Curtis, Allen C. Nielson, Russ Hauge, Jeremy Randolf, John Ladenburg, Jim Sweetser, James L. Nagle,* and *Jeffrey C. Sullivan.*

Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union by *Susan N. Herman, Gerard E. Lynch,* and *Steven R. Shapiro;* for Americans for Effective Law Enforcement, Inc., et al. by *Fred E. Inbau, Wayne W. Schmidt, James P. Manak, Richard M. Weintraub,* and *Bernard J. Farber;* for the National Association of Criminal Defense Lawyers by *Richard J. Troberman* and *David B. Smith;* and for Advocates for Highway and Auto Safety et al. by *Henry M. Jasny.*

not constitute "punishment" for purposes of the Double Jeopardy Clause.

I

*No. 95–345:* Michigan Police found marijuana growing adjacent to respondent Guy Ursery's house, and discovered marijuana seeds, stems, stalks, and a grow light within the house. The United States instituted civil forfeiture proceedings against the house, alleging that the property was subject to forfeiture under 84 Stat. 1276, as amended, 21 U. S. C. § 881(a)(7), because it had been used for several years to facilitate the unlawful processing and distribution of a controlled substance. Ursery ultimately paid the United States $13,250 to settle the forfeiture claim in full. Shortly before the settlement was consummated, Ursery was indicted for manufacturing marijuana, in violation of § 841(a)(1). A jury found him guilty, and he was sentenced to 63 months in prison.

The Court of Appeals for the Sixth Circuit by a divided vote reversed Ursery's criminal conviction, holding that the conviction violated the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. 59 F. 3d 568 (1995). The court based its conclusion in part upon its belief that our decisions in *United States* v. *Halper*, 490 U. S. 435 (1989), and *Austin* v. *United States*, 509 U. S. 602 (1993), meant that any civil forfeiture under § 881(a)(7) constitutes punishment for purposes of the Double Jeopardy Clause. Ursery, in the court's view, had therefore been "punished" in the forfeiture proceeding against his property, and could not be subsequently criminally tried for violation of 21 U. S. C. § 841(a)(1).

*No. 95–346:* Following a jury trial, Charles Wesley Arlt and James Wren were convicted of: conspiracy to aid and abet the manufacture of methamphetamine, in violation of 21 U. S. C. § 846; conspiracy to launder monetary instruments, in violation of 18 U. S. C. § 371; and numerous counts of money laundering, in violation of § 1956. The District Court

sentenced Arlt to life in prison and a 10-year term of supervised release, and imposed a fine of $250,000. Wren was sentenced to life imprisonment and a 5-year term of supervised release.

Before the criminal trial had started, the United States had filed a civil *in rem* complaint against various property seized from, or titled to, Arlt and Wren, or Payback Mines, a corporation controlled by Arlt. The complaint alleged that each piece of property was subject to forfeiture both under 18 U. S. C. § 981(a)(1)(A), which provides that "[a]ny property . . . involved in a transaction or attempted transaction in violation of" § 1956 (the money-laund/ring statute) "is subject to forfeiture to the United States"; and under 21 U. S. C. § 881(a)(6), which provides for the forfeiture of (i) "[a]ll . . . things of value furnished or intended to be furnished by any person in exchange for" illegal drugs, (ii) "all proceeds traceable to such an exchange," and (iii) "all moneys, negotiable instruments, and securities used or intended to be used to facilitate" a federal drug felony. The parties agreed to defer litigation of the forfeiture action during the criminal prosecution. More than a year after the conclusion of the criminal trial, the District Court granted the Government's motion for summary judgment in the civil forfeiture proceeding.

Arlt and Wren appealed the decision in the forfeiture action, and the Court of Appeals for the Ninth Circuit reversed, holding that the forfeiture violated the Double Jeopardy Clause. 33 F. 3d 1210 (1994), amended 56 F. 3d 41 (1995). The court's decision was based in part upon the same view as that expressed by the Court of Appeals for the Sixth Circuit in Ursery's case—that our decisions in *Halper, supra,* and *Austin, supra,* meant that, as a categorical matter, forfeitures under §§ 981(a)(1)(A) and 881(a)(6) always constitute "punishment."

We granted the Government's petition for certiorari in each of the two cases, and we now reverse. 516 U. S. 1070 (1996).

## II

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U. S. Const., Amdt. 5. The Clause serves the function of preventing both "successive punishments and . . . successive prosecutions." *United States* v. *Dixon*, 509 U. S. 688, 696 (1993), citing *North Carolina* v. *Pearce*, 395 U. S. 711 (1969). The protection against multiple punishments prohibits the Government from " 'punishing twice, or attempting a second time to punish criminally for the same offense.' " *Witte* v. *United States*, 515 U. S. 389, 396 (1995) (emphasis deleted), quoting *Helvering* v. *Mitchell*, 303 U. S. 391, 399 (1938).

In the decisions that we review, the Courts of Appeals held that the civil forfeitures constituted "punishment," making them subject to the prohibitions of the Double Jeopardy Clause. The Government challenges that characterization of the forfeitures, arguing that the courts were wrong to conclude that civil forfeitures are punitive for double jeopardy purposes.[1]

---

[1] The Government raises three other challenges to the decisions that we review. First, focusing on the decision of the Court of Appeals for the Sixth Circuit in No. 95–345, the Government contends that the Double Jeopardy Clause applies only to prohibit a punishment imposed following a "jeopardy," and that a civil forfeiture, regardless whether it is a "punishment," is not a "jeopardy." Thus, because Ursery had not been placed in "jeopardy" in the civil forfeiture proceeding against his house, the Double Jeopardy Clause was inapplicable to his criminal prosecution. Second, the Government argues that the civil forfeiture of property is not the same offense as a criminal prosecution, and therefore that the double jeopardy protection against multiple punishments for the same offense is not at issue here. Finally, the Government argues that a civil forfeiture action that is parallel and contemporaneous with a criminal prosecution should be deemed to constitute a single proceeding within the meaning of the Double Jeopardy Clause.

Because we conclude that the civil forfeitures involved in these cases do not constitute punishment under the Double Jeopardy Clause, see *infra*, at 292, we do not address those three arguments in this opinion.

274

## A

Since the earliest years of this Nation, Congress has authorized the Government to seek parallel *in rem* civil forfeiture actions and criminal prosecutions based upon the same underlying events. See, *e. g.*, Act of July 31, 1789, ch. 5, § 12, 1 Stat. 39 (goods unloaded at night or without a permit subject to forfeiture and persons unloading subject to criminal prosecution); § 25, *id.*, at 43 (persons convicted of buying or concealing illegally imported goods subject to both monetary fine and *in rem* forfeiture of the goods); § 34, *id.*, at 46 (imposing criminal penalty and *in rem* forfeiture where person convicted of relanding goods entitled to drawback); see also *The Palmyra*, 12 Wheat. 1, 14–15 (1827) ("Many cases exist, where there is both a forfeiture *in rem* and a personal penalty"); cf. *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U. S. 663, 683 (1974) (discussing adoption of forfeiture statutes by early Congresses). And, in a long line of cases, this Court has considered the application of the Double Jeopardy Clause to civil forfeitures, consistently concluding that the Clause does not apply to such actions because they do not impose punishment.

One of the first cases to consider the relationship between the Double Jeopardy Clause and civil forfeiture was *Various Items of Personal Property* v. *United States*, 282 U. S. 577 (1931). In *Various Items*, the Waterloo Distilling Corporation had been ordered to forfeit a distillery, warehouse, and denaturing plant, on the ground that the corporation had conducted its distilling business in violation of federal law. The Government conceded that the corporation had been convicted of criminal violations prior to the initiation of the forfeiture proceeding, and admitted that the criminal conviction had been based upon "the transactions set forth . . . as a basis for the forfeiture." *Id.*, at 579. Considering the corporation's argument that the forfeiture action violated the Double Jeopardy Clause, this Court unanimously held that the Clause was inapplicable to civil forfeiture actions:

"[This] forfeiture proceeding . . . is *in rem.* It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted, and punished. *The for-feiture is no part of the punishment for the criminal offense. The provision of the Fifth Amendment to the Constitution in respect of double jeopardy does not apply." Id.,* at 581 (citations omitted; emphasis added).

In reaching its conclusion, the Court drew a sharp distinction between *in rem* civil *forfeitures* and *in personam* civil *penalties* such as fines: Though the latter could, in some circumstances, be punitive, the former could not. *Ibid.* Referring to a case that was decided the same day as *Various Items,* the Court made its point absolutely clear:

"In *United States* v. *La Franca,* [282 U. S.] 568, we hold that, under § 5 of the Willis-Campbell Act, a civil action to recover taxes, which in fact are penalties, is punitive in character and barred by a prior conviction of the defendant for a criminal offense involving the same transactions. This, however, is not that case, but a proceeding *in rem* to forfeit property used in committing an offense." *Id.,* at 580.

Had the Court in *Various Items* found that a civil forfeiture could constitute a "punishment" under the Fifth Amendment, its holding would have been quite remarkable. As that Court recognized, "[a]t common law, in many cases, the right of forfeiture did not attach until the offending person had been convicted and the record of conviction produced." *Ibid.* In other words, at common law, not only was it the case that a criminal conviction did not *bar* a civil forfeiture, but, in fact, the civil forfeiture could not be *instituted* unless a criminal conviction had already been obtained. Though this Court had held that common-law rule inapplicable where

the right of forfeiture was "created by statute, *in rem,* cognizable on the revenue side of the exchequer," *The Palmyra, supra,* at 14, it never had suggested that the Constitution *prohibited* for statutory civil forfeiture what was *required* for common-law civil forfeiture. For the *Various Items* Court to have held that the forfeiture was prohibited by the prior criminal proceeding would have been directly contrary to the common-law rule, and would have called into question the constitutionality of forfeiture statutes thought constitutional for over a century. See *United States* v. *Curtiss-Wright Export Corp.,* 299 U. S. 304, 327–328 (1936) (Evidence of a longstanding legislative practice "goes a long way in the direction of proving the presence of unassailable ground for the constitutionality of the practice").

Following its decision in *Various Items,* the Court did not consider another double jeopardy case involving a civil forfeiture for 40 years. Then, in *One Lot Emerald Cut Stones* v. *United States,* 409 U. S. 232 (1972) *(per curiam),* the Court's brief opinion reaffirmed the rule of *Various Items.* In *Emerald Cut Stones,* after having been acquitted of smuggling jewels into the United States, the owner of the jewels intervened in a proceeding to forfeit them as contraband. We rejected the owner's double jeopardy challenge to the forfeiture, holding that "[i]f for no other reason, the forfeiture is not barred by the Double Jeopardy Clause of the Fifth Amendment because it involves neither two criminal trials nor two criminal punishments." 409 U. S., at 235. Noting that the forfeiture provisions had been codified separately from parallel criminal provisions, the Court determined that the forfeiture clearly was "a civil sanction." *Id.,* at 236. The forfeitures were not criminal punishments because they did not impose a second *in personam* penalty for the criminal defendant's wrongdoing.

In our most recent decision considering whether a civil forfeiture constitutes punishment under the Double Jeopardy Clause, we again affirmed the rule of *Various Items.* In

*United States* v. *One Assortment of 89 Firearms*, 465 U. S. 354 (1984), the owner of the defendant weapons was acquitted of charges of dealing firearms without a license. The Government then brought a forfeiture action against the firearms under 18 U. S. C. § 924(d), alleging that they were used or were intended to be used in violation of federal law.

In another unanimous decision, we held that the forfeiture was not barred by the prior criminal proceeding. We began our analysis by stating the rule for our decision:

> "Unless the forfeiture sanction was intended as punishment, so that the proceeding is essentially criminal in character, the Double Jeopardy Clause is not applicable. The question, then, is whether a § 924(d) forfeiture proceeding is intended to be, or by its nature necessarily is, criminal and punitive, or civil and remedial." *89 Firearms, supra*, at 362 (citations omitted).

Our inquiry proceeded in two stages. In the first stage, we looked to Congress' intent, and concluded that "Congress designed forfeiture under § 924(d) as a remedial civil sanction." 465 U. S., at 363. This conclusion was based upon several findings. First, noting that the forfeiture proceeding was *in rem*, we found it significant that "[a]ctions *in rem* have traditionally been viewed as civil proceedings, with jurisdiction dependent upon seizure of a physical object." *Ibid.*, citing *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U. S., at 684. Second, we found that the forfeiture provision, because it reached both weapons used in violation of federal law and those "intended to be used" in such a manner, reached a broader range of conduct than its criminal analog. Third, we concluded that the civil forfeiture "further[ed] broad remedial aims," including both "discouraging unregulated commerce in firearms" and "removing from circulation firearms that have been used or intended for use outside regulated channels of commerce." *89 Firearms, supra*, at 364.

In the second stage of our analysis, we looked to " 'whether the statutory scheme was so punitive either in purpose or effect as to negate' Congress' intention to establish a civil remedial mechanism," 465 U. S., at 365, quoting *United States* v. *Ward,* 448 U. S. 242, 248–249 (1980). Considering several factors that we had used previously in order to determine whether a civil proceeding was so punitive as to require application of the full panoply of constitutional protections required in a criminal trial, see *id.,* at 248, we found only one of those factors to be present in the § 924(d) forfeiture. By itself, however, the fact that the behavior proscribed by the forfeiture was already a crime proved insufficient to turn the forfeiture into a punishment subject to the Double Jeopardy Clause. Hence, we found that the gun owner had "failed to establish by the 'clearest proof' that Congress has provided a sanction so punitive as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " *89 Firearms, supra,* at 366, quoting *Rex Trailer Co.* v. *United States,* 350 U. S. 148, 154 (1956). We concluded our decision by restating that civil forfeiture is "not an additional penalty for the commission of a criminal act, but rather is a separate civil sanction, remedial in nature." *89 Firearms, supra,* at 366.

### B

Our cases reviewing civil forfeitures under the Double Jeopardy Clause adhere to a remarkably consistent theme. Though the two-part analytical construct employed in *89 Firearms* was more refined, perhaps, than that we had used over 50 years earlier in *Various Items,* the conclusion was the same in each case: *In rem* civil forfeiture is a remedial civil sanction, distinct from potentially punitive *in personam* civil penalties such as fines, and does not constitute a punishment under the Double Jeopardy Clause. See *Gore* v. *United States,* 357 U. S. 386, 392 (1958) ("In applying a provision like that of double jeopardy, which is rooted in history

and is not an evolving concept . . . , a long course of adjudication in this Court carries impressive authority").

In the cases that we currently review, the Court of Appeals for the Ninth Circuit recognized as much, concluding that after *89 Firearms*, "the law was clear that civil forfeitures did not constitute 'punishment' for double jeopardy purposes." 33 F. 3d, at 1218. Nevertheless, that court read three of our decisions to have "abandoned" *89 Firearms* and the oft-affirmed rule of *Various Items*. According to the Court of Appeals for the Ninth Circuit, through our decisions in *United States* v. *Halper*, 490 U. S. 435 (1989), *Austin* v. *United States*, 509 U. S. 602 (1993), and *Department of Revenue of Mont.* v. *Kurth Ranch*, 511 U. S. 767 (1994), we "changed [our] collective mind," and "adopted a new test for determining whether a nominally civil sanction constitutes 'punishment' for double jeopardy purposes." 33 F. 3d, at 1218–1219. The Court of Appeals for the Sixth Circuit shared the view of the Ninth Circuit, though it did not directly rely upon *Kurth Ranch*. We turn now to consider whether *Halper*, *Austin*, and *Kurth Ranch* accomplished the radical jurisprudential shift perceived by the Courts of Appeals.

In *Halper*, we considered "whether and under what circumstances a civil penalty may constitute 'punishment' for the purposes of double jeopardy analysis." *Halper*, *supra*, at 436. Based upon his submission of 65 inflated Medicare claims, each of which overcharged the Government by $9, Halper was criminally convicted of 65 counts of violating the false-claims statute, 18 U. S. C. § 287 (1982 ed.), as well as of 16 counts of mail fraud, and was sentenced to two years in prison and fined $5,000. Following that criminal conviction, the Government successfully brought a civil action against Halper under 31 U. S. C. § 3729 (1982 ed. and Supp. II). The District Court hearing the civil action determined that Halper was liable to the Government for over $130,000 under § 3729, which then provided for liability in the amount of

$2,000 per violation, double the Government's actual damages, and court costs. The court concluded that imposing the full civil penalty would constitute a second punishment for Halper's already-punished criminal offense, however, and therefore reduced Halper's liability to double the actual damages suffered by the Government and the costs of the civil action. The Government directly appealed that decision to this Court.

This Court agreed with the District Court's analysis. We determined that our precedent had established no absolute and irrebuttable rule that a civil fine cannot be "punishment" under the Double Jeopardy Clause. Though it was well established that "a civil remedy does not rise to the level of 'punishment' merely because Congress provided for civil recovery in excess of the Government's actual damages," we found that our case law did "not foreclose the possibility that in a particular case a civil penalty . . . may be so extreme and so divorced from the Government's damages and expenses as to constitute punishment." 490 U. S., at 442. Emphasizing the case-specific nature of our inquiry, *id.*, at 448, we compared the size of the fine imposed on Halper, $130,000, to the damages actually suffered by the Government as a result of Halper's actions, estimated by the District Court at $585. Noting that the fine was more than 220 times greater than the Government's damages, we agreed with the District Court that "Halper's $130,000 liability is sufficiently disproportionate that the sanction constitutes a second punishment in violation of double jeopardy." *Id.*, at 452. We remanded to the District Court so that it could hear evidence regarding the Government's actual damages, and could then reduce Halper's liability to a nonpunitive level. *Ibid.*

In *Austin*, we considered whether a civil forfeiture could violate the Excessive Fines Clause of the Eighth Amendment to the Constitution, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed . . . ." Aware that Austin had sold two grams of cocaine the pre-

vious day, police searched his mobile home and body shop. Their search revealed small amounts of marijuana and cocaine, a handgun, drug paraphernalia, and almost $5,000 in cash. Austin was charged with one count of possessing cocaine with intent to distribute, to which he pleaded guilty. The Government then initiated a civil forfeiture proceeding against Austin's mobile home and auto shop, contending that they had been "used" or were "intended for use" in the commission of a drug offense. See 21 U. S. C. §§ 881(a)(4) and (a)(7). Austin contested the forfeiture on the ground of the Excessive Fines Clause, but the District Court and the Court of Appeals held the forfeiture constitutional.

We limited our review to the question "whether the Excessive Fines Clause of the Eighth Amendment applies to forfeitures of property under 21 U. S. C. §§ 881(a)(4) and (a)(7)." *Austin, supra,* at 604. We began our analysis by rejecting the argument that the Excessive Fines Clause was limited solely to criminal proceedings: The relevant question was not whether a particular proceeding was criminal or civil, we determined, but rather was whether forfeiture under §§ 881 (a)(4) and (a)(7) constituted "punishment" for the purposes of the Eighth Amendment. *Austin, supra,* at 610. In an effort to answer that question, we briefly reviewed the history of civil forfeiture both in this country and in England, see 509 U. S., at 611–618, taking a categorical approach that contrasted sharply with *Halper*'s case-specific approach to determining whether a civil penalty constitutes punishment. Ultimately, we concluded that "forfeiture under [§§ 881(a)(4) and (a)(7)] constitutes 'payment to a sovereign as punishment for some offense,' and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause." 509 U. S., at 622 (citation omitted).

In *Department of Revenue of Mont.* v. *Kurth Ranch, supra,* we considered whether a state tax imposed on marijuana was invalid under the Double Jeopardy Clause when the taxpayer had already been criminally convicted of own-

ing the marijuana that was taxed. We first established that the fact that Montana had labeled the civil sanction a "tax" did not end our analysis. We then turned to consider whether the tax was so punitive as to constitute a punishment subject to the Double Jeopardy Clause. Several differences between the marijuana tax imposed by Montana and the typical revenue-raising tax were readily apparent. The Montana tax was unique in that it was conditioned on the commission of a crime and was imposed only after the taxpayer had been arrested: Thus, only a person charged with a criminal offense was subject to the tax. We also noted that the taxpayer did not own or possess the taxed marijuana at the time that the tax was imposed. From these differences, we determined that the tax was motivated by a "'penal and prohibitory intent rather than the gathering of revenue.'" *Id.*, at 781. Concluding that the Montana tax proceeding "was the functional equivalent of a successive criminal prosecution," we affirmed the Court of Appeals' judgment barring the tax. *Id.*, at 784.

We think that the Court of Appeals for the Sixth Circuit and the Court of Appeals for the Ninth Circuit misread *Halper, Austin,* and *Kurth Ranch.* None of those decisions purported to overrule the well-established teaching of *Various Items, Emerald Cut Stones,* and *89 Firearms. Halper* involved not a civil *forfeiture,* but a civil *penalty.* That its rule was limited to the latter context is clear from the decision itself, from the historical distinction that we have drawn between civil forfeiture and civil penalties, and from the practical difficulty of applying *Halper* to a civil forfeiture.

In *Halper,* we emphasized that our decision was limited to the context of civil penalties:

> "What we announce now is a rule for the rare case, the case such as the one before us, where *a fixed-penalty provision* subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a

defendant previously has sustained a criminal penalty and the *civil penalty* sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment." 490 U. S., at 449–450 (emphasis added).

The narrow focus of *Halper* followed from the distinction that we have drawn historically between civil forfeiture and civil penalties. Since at least *Various Items*, we have distinguished civil penalties such as fines from civil forfeiture proceedings that are *in rem*. While a "civil action to recover . . . penaltie[s] is punitive in character," and much like a criminal prosecution in that "it is the wrongdoer in person who is proceeded against . . . and punished," in an *in rem* forfeiture proceeding, "[i]t is the property which is proceeded against, and by resort to a legal fiction, held guilty and condemned." *Various Items*, 282 U. S., at 580–581. Thus, though for double jeopardy purposes we have never balanced the value of property forfeited in a particular case against the harm suffered by the Government in that case, we have balanced the size of a particular civil penalty against the Government's harm. See, *e. g.*, *Rex Trailer Co.* v. *United States*, 350 U. S., at 154 (fines not "so unreasonable or excessive" as to transform a civil remedy into a criminal penalty); *United States ex rel. Marcus* v. *Hess*, 317 U. S. 537 (1943) (fine of $315,000 not so disproportionate to Government's harm of $101,500 as to transform the fine into punishment). Indeed, the rule set forth in *Halper* developed from the teaching of *Rex Trailer* and *Hess*. See *Halper, supra*, at 445–447.

It is difficult to see how the rule of *Halper* could be applied to a civil forfeiture. Civil penalties are designed as a rough form of "liquidated damages" for the harms suffered by the

Government as a result of a defendant's conduct. See *Rex Trailer, supra,* at 153–154. The civil penalty involved in *Halper,* for example, provided for a fixed monetary penalty for each false claim count on which the defendant was convicted in the criminal proceeding. Whether a "fixed-penalty provision" that seeks to compensate the Government for harm it has suffered is "so extreme" and "so divorced" from the penalty's nonpunitive purpose of compensating the Government as to be a punishment may be determined by balancing the Government's harm against the size of the penalty. Civil forfeitures, in contrast to civil penalties, are designed to do more than simply compensate the Government. Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct. Though it may be possible to quantify the value of the property forfeited, it is virtually impossible to quantify, even approximately, the nonpunitive purposes served by a particular civil forfeiture. Hence, it is practically difficult to determine whether a particular forfeiture bears no rational relationship to the nonpunitive purposes of that forfeiture. Quite simply, the case-by-case balancing test set forth in *Halper,* in which a court must compare the harm suffered by the Government against the size of the penalty imposed, is inapplicable to civil forfeiture.[2]

---

[2] JUSTICE STEVENS' dissent is grounded in the different interpretation that he gives *Halper.* He finds that *Halper* announced "two different rules": a general rule, applicable to all civil sanctions, useful for determining whether a sanction is "of a punitive character"; and a "narrower rule," similar to our understanding of the case, that requires "an accounting of the Government's damages and costs." *Post,* at 308. JUSTICE STEVENS faults us in these cases for failing to apply the "general rule" of *Halper.*

The problem with JUSTICE STEVENS' interpretation of *Halper,* of course, and therefore with his entire argument, is that *Halper* did not announce two rules. Nowhere in *Halper* does the Court set forth two distinct rules or purport to apply a two-step analysis. JUSTICE STEVENS finds his "general rule" in a dictum from *Halper:* " '[A] civil sanction that

We recognized as much in *Kurth Ranch.* In that case, the Court expressly disclaimed reliance upon *Halper,* finding that its case-specific approach was impossible to apply outside the context of a fixed civil-penalty provision. Reviewing the Montana marijuana tax, we held that because "tax

cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment.'" *Post,* at 306, quoting *United States* v. *Halper,* 490 U. S. 435, 448 (1989). But the discussion immediately following that dictum makes clear that it states not a new and separate test for whether a sanction is a punishment, but rather only a rephrasing of JUSTICE STEVENS' "narrower" rule, *i. e.,* the rule requiring an "accounting of the Government's damages and costs." *Id.,* at 449.

"We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished . . . may not be subjected to an additional civil sanction *to the extent* that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

"We acknowledge that this inquiry will not be an exact pursuit. In our decided cases we have noted that the precise amount of the Government's damages and costs may prove to be difficult, if not impossible, to ascertain. . . . [I]t would be difficult if not impossible in many cases for a court to determine the precise dollar figure at which a civil sanction has accomplished its remedial purpose of making the Government whole, but beyond which the sanction takes on the quality of punishment." *Id.,* at 448–449 (emphasis added); see also *id.,* at 449–451.

The "general rule" discovered by JUSTICE STEVENS in *Halper* would supplant, not mimic, see *post,* at 306, the rule of *United States* v. *One Assortment of 89 Firearms,* 465 U. S. 354 (1984), and *One Lot Emerald Cut Stones* v. *United States,* 409 U. S. 232 (1972). Whether a particular sanction "cannot fairly be said *solely* to serve a remedial purpose" is an inquiry radically different from that we have traditionally employed in order to determine whether, as a categorical matter, a civil sanction is subject to the Double Jeopardy Clause. Yet nowhere in *Halper* does the Court purport to make such a sweeping change in the law, instead emphasizing repeatedly the narrow scope of its decision. *Halper, supra,* at 449 (announcing rule for "the rare case"). If the "general rule" of JUSTICE STEVENS were applied literally, then virtually every sanction would be declared to be a punishment: It is hard to imagine a sanction that has no punitive aspect whatsoever. JUSTICE STEVENS' interpretation of *Halper* is both contrary to the decision itself and would create an unworkable rule inconsistent with well-established precedent.

statutes serve a purpose quite different from civil penalties, . . . *Halper*'s method of determining whether the exaction was remedial or punitive simply does not work in the case of a tax statute." *Kurth Ranch*, 511 U. S., at 784 (internal quotation marks omitted); see also *id.*, at 786 (REHNQUIST, C. J., dissenting) (*Halper* inapplicable outside of "'fixed-penalty provision[s]'" that are meant "to recover the costs incurred by the Government for bringing someone to book for some violation of law"). This is not to say that there is no occasion for analysis of the Government's harm. *89 Firearms* makes clear the relevance of an evaluation of the harms alleged. The point is simply that *Halper*'s case-specific approach is inapplicable to civil forfeitures.

In the cases that we review, the Courts of Appeals did not find *Halper* difficult to apply to civil forfeiture because they concluded that its case-by-case balancing approach had been supplanted in *Austin* by a categorical approach that found a civil sanction to be punitive if it could not "fairly be said solely to serve a remedial purpose." See *Austin*, 509 U. S., at 610; see also *Halper*, 490 U. S., at 448. But *Austin*, it must be remembered, did not involve the Double Jeopardy Clause at all. *Austin* was decided solely under the Excessive Fines Clause of the Eighth Amendment, a constitutional provision which we never have understood as parallel to, or even related to, the Double Jeopardy Clause of the Fifth Amendment. The only discussion of the Double Jeopardy Clause contained in *Austin* appears in a footnote that acknowledges our decisions holding that "[t]he Double Jeopardy Clause has been held not to apply in civil forfeiture proceedings . . . where the forfeiture could properly be characterized as remedial." *Austin, supra*, at 608, n. 4. And in *Austin* we expressly recognized and approved our decisions in *One Lot Emerald Cut Stones* v. *United States*, 409 U. S. 232 (1972), and *United States* v. *One Assortment of 89 Firearms*, 465 U. S. 354 (1984). See *Austin, supra*, at 608, n. 4.

We acknowledged in *Austin* that our categorical approach under the Excessive Fines Clause was wholly distinct from the case-by-case approach of *Halper*, and we explained that the difference in approach was based in a significant difference between the purposes of our analysis under each constitutional provision. See *Austin, supra,* at 622, n. 14. It is unnecessary in a case under the Excessive Fines Clause to inquire at a preliminary stage whether the civil sanction imposed in that particular case is totally inconsistent with any remedial goal. Because the second stage of inquiry under the Excessive Fines Clause asks whether the particular sanction in question is so large as to be "excessive," see *Austin,* 509 U. S., at 622–623 (declining to establish criteria for excessiveness), a preliminary-stage inquiry that focused on the disproportionality of a particular sanction would be duplicative of the excessiveness analysis that would follow. See *id.,* at 622, n. 14 ("[I]t appears to make little practical difference whether the Excessive Fines Clause applies to all forfeitures . . . or only to those that cannot be characterized as purely remedial," because the Excessive Fines Clause "prohibits only the imposition of 'excessive' fines, and a fine that serves purely remedial purposes cannot be considered 'excessive' in any event"). Forfeitures effected under 21 U. S. C. §§ 881(a)(4) and (a)(7) are subject to review for excessiveness under the Eighth Amendment after *Austin;* this does not mean, however, that those forfeitures are so punitive as to constitute punishment for the purposes of double jeopardy. The holding of *Austin* was limited to the Excessive Fines Clause of the Eighth Amendment, and we decline to import the analysis of *Austin* into our double jeopardy jurisprudence.

In sum, nothing in *Halper, Kurth Ranch,* or *Austin* purported to replace our traditional understanding that civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause. Congress long has authorized the Government to bring parallel criminal proceedings and civil

forfeiture proceedings, and this Court consistently has found civil forfeitures not to constitute punishment under the Double Jeopardy Clause. It would have been quite remarkable for this Court both to have held unconstitutional a well-established practice, and to have overruled a long line of precedent, without having even suggested that it was doing so. *Halper* dealt with *in personam* civil penalties under the Double Jeopardy Clause; *Kurth Ranch* with a tax proceeding under the Double Jeopardy Clause; and *Austin* with civil forfeitures under the Excessive Fines Clause. None of those cases dealt with the subject of these cases: *in rem* civil forfeitures for purposes of the Double Jeopardy Clause.

## C

We turn now to consider the forfeitures in these cases under the teaching of *Various Items*, *Emerald Cut Stones*, and *89 Firearms*. Because it provides a useful analytical tool, we conduct our inquiry within the framework of the two-part test used in *89 Firearms*. First, we ask whether Congress intended proceedings under 21 U. S. C. § 881 and 18 U. S. C. § 981 to be criminal or civil. Second, we turn to consider whether the proceedings are so punitive in fact as to "persuade us that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature," despite Congress' intent. 465 U. S., at 366.

There is little doubt that Congress intended these forfeitures to be civil proceedings. As was the case in *89 Firearms*, "Congress' intent in this regard is most clearly demonstrated by the procedural mechanisms it established for enforcing forfeitures under the statute[s]." *Id.*, at 363. Both 21 U. S. C. § 881 and 18 U. S. C. § 981, which is entitled "Civil forfeiture," provide that the laws "relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws . . . shall apply to seizures and forfeitures incurred" under §§ 881 and 981. See 21 U. S. C. § 881(d); 18 U. S. C. § 981(d). Because forfeit-

ure proceedings under the customs laws are *in rem,* see 19 U. S. C. § 1602 *et seq.,* it is clear that Congress intended that a forfeiture under § 881 or § 981, like the forfeiture reviewed in *89 Firearms,* would be a proceeding *in rem.* Congress specifically structured these forfeitures to be impersonal by targeting the property itself. "In contrast to the *in personam* nature of criminal actions, actions *in rem* have traditionally been viewed as civil proceedings, with jurisdiction dependent upon seizure of a physical object." *89 Firearms, supra,* at 363, citing *Calero-Toledo,* 416 U. S., at 684.

Other procedural mechanisms governing forfeitures under §§ 881 and 981 also indicate that Congress intended such proceedings to be civil. Forfeitures under either statute are governed by 19 U. S. C. § 1607, which provides that actual notice of the impending forfeiture is unnecessary when the Government cannot identify any party with an interest in the seized article, and by § 1609, which provides that seized property is subject to forfeiture through a summary administrative procedure if no party files a claim to the property. And 19 U. S. C. § 1615, which governs the burden of proof in forfeiture proceedings under §§ 881 and 981, provides that once the Government has shown probable cause that the property is subject to forfeiture, then "the burden of proof shall lie upon [the] claimant." In sum, "[b]y creating such distinctly civil procedures for forfeitures under [§§ 881 and 981], Congress has 'indicate[d] clearly that it intended a civil, not a criminal sanction.'" *89 Firearms, supra,* at 363, quoting *Helvering* v. *Mitchell,* 303 U. S. 391, 402 (1938).[3]

---

[3] JUSTICE STEVENS mischaracterizes our holding. We do not hold that *in rem* civil forfeiture is *per se* exempt from the scope of the Double Jeopardy Clause. See *post,* at 300–305. Similarly, we do not rest our conclusion in these cases upon the long-recognized fiction that a forfeiture *in rem* punishes only malfeasant property rather than a particular person. See *post,* at 313–316. That a forfeiture is designated as civil by Congress and proceeds *in rem* establishes a presumption that it is not subject to double jeopardy. See, *e. g., 89 Firearms,* 465 U. S., at 363. Nevertheless, where the "clearest proof" indicates that an *in rem* civil forfeiture is "so

Moving to the second stage of our analysis, we find that there is little evidence, much less the "'clearest proof'" that we require, see *89 Firearms, supra,* at 365, quoting *Ward,* 448 U. S., at 249, suggesting that forfeiture proceedings under 21 U. S. C. §§ 881(a)(6) and (a)(7), and 18 U. S. C. § 981(a)(1)(A), are so punitive in form and effect as to render them criminal despite Congress' intent to the contrary. The statutes involved in these cases are, in most significant respects, indistinguishable from those reviewed, and held not to be punitive, in *Various Items, Emerald Cut Stones,* and *89 Firearms.*

Most significant is that § 981(a)(1)(A) and §§ 881(a)(6) and (a)(7), while perhaps having certain punitive aspects, serve important nonpunitive goals. Title 21 U. S. C. § 881(a)(7), under which Ursery's property was forfeited, provides for the forfeiture of "all real property . . . which is used or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a federal drug felony. Requiring the forfeiture of property used to commit federal narcotics violations encourages property owners to take care in managing their property and ensures that they will not permit that property to be used for illegal purposes. See *Bennis* v. *Michigan,* 516 U. S. 442, 452 (1996) ("Forfeiture of property prevents illegal uses . . . by imposing an economic penalty, thereby rendering illegal behavior unprofitable"); *89 Firearms, supra,* at 364 (forfeiture "discourages unregulated commerce in firearms"); *Calero-Toledo, supra,* at 687–688. In many circumstances, the forfeiture may abate a nuisance. See, *e. g., United States* v. *141st Street Corp.,* 911 F. 2d 870 (CA2 1990) (forfeiting apartment building used to sell crack cocaine); see also *Bennis, supra,* at 452 (affirming application of Michigan statute abating car as a nuisance; forfeiture "prevent[s] further illicit use of" property); cf. *89 Firearms,* 465

punitive either in purpose or effect" as to be equivalent to a criminal proceeding, that forfeiture may be subject to the Double Jeopardy Clause. *Id.,* at 365.

U. S., at 364 (forfeiture "remov[ed] from circulation firearms that have been used or intended for use" illegally); *Emerald Cut Stones,* 409 U. S., at 237 (forfeiture "prevented forbidden merchandise from circulating in the United States").

The forfeiture of the property claimed by Arlt and Wren took place pursuant to 18 U. S. C. § 981(a)(1)(A) and 21 U. S. C. § 881(a)(6). Section 981(a)(1)(A) provides for the forfeiture of "[a]ny property" involved in illegal money-laundering transactions. Section 881(a)(6) provides for the forfeiture of "[a]ll . . . things of value furnished or intended to be furnished by any person in exchange for" illegal drugs; "all proceeds traceable to such an exchange"; and "all moneys, negotiable instruments, and securities used or intended to be used to facilitate" a federal drug felony. The same remedial purposes served by § 881(a)(7) are served by §§ 881(a)(6) and 981(a)(1)(A). Only one point merits separate discussion. To the extent that § 881(a)(6) applies to "proceeds" of illegal drug activity, it serves the additional nonpunitive goal of ensuring that persons do not profit from their illegal acts.

Other considerations that we have found relevant to the question whether a proceeding is criminal also tend to support a conclusion that § 981(a)(1)(A) and §§ 881(a)(6) and (a)(7) are civil proceedings. See *Ward, supra,* at 247–248, n. 7, 249 (listing relevant factors and noting that they are neither exhaustive nor dispositive). First, in light of our decisions in *Various Items, Emerald Cut Stones,* and *89 Firearms,* and the long tradition of federal statutes providing for a forfeiture proceeding following a criminal prosecution, it is absolutely clear that *in rem* civil forfeiture has not historically been regarded as punishment, as we have understood that term under the Double Jeopardy Clause. Second, there is no requirement in the statutes that we currently review that the Government demonstrate scienter in order to establish that the property is subject to forfeiture; indeed, the property may be subject to forfeiture even if no party files a

claim to it and the Government never shows any connection between the property and a particular person. See 19 U. S. C. § 1609. Though both §§ 881(a) and 981(a) contain an "innocent owner" exception, we do not think that such a provision, without more indication of an intent to punish, is relevant to the question whether a statute is punitive under the Double Jeopardy Clause. Third, though both statutes may fairly be said to serve the purpose of deterrence, we long have held that this purpose may serve civil as well as criminal goals. See, *e. g.*, *89 Firearms, supra,* at 364; *Calero-Toledo,* 416 U. S., at 677–678. We recently reaffirmed this conclusion in *Bennis* v. *Michigan, supra,* at 452, where we held that "forfeiture . . . serves a deterrent purpose distinct from any punitive purpose." Finally, though both statutes are tied to criminal activity, as was the case in *89 Firearms,* this fact is insufficient to render the statutes punitive. See *89 Firearms, supra,* at 365–366. It is well settled that "Congress may impose both a criminal and a civil sanction in respect to the same act or omission," *Helvering,* 303 U. S., at 399. By itself, the fact that a forfeiture statute has some connection to a criminal violation is far from the "clearest proof" necessary to show that a proceeding is criminal.

We hold that these *in rem* civil forfeitures are neither "punishment" nor criminal for purposes of the Double Jeopardy Clause. The judgments of the Court of Appeals for the Sixth Circuit, in No. 95–345, and of the Court of Appeals for the Ninth Circuit, in No. 95–346, are, accordingly, reversed.

*It is so ordered.*

JUSTICE KENNEDY, concurring.

I join the Court's opinion and add these further observations.

In *Austin* v. *United States,* 509 U. S. 602, 619–622 (1993), we described the civil *in rem* forfeiture provision of 21 U. S. C. § 881(a)(7) at issue here as punitive. In *Libretti* v. *United States,* 516 U. S. 29 (1995), we reviewed 21 U. S. C.

§ 853, which in almost identical terms provides for criminal forfeiture of property involved in or derived from drug crimes. We held that the "fundamental nature of criminal forfeiture" is punishment. 516 U. S., at 41. Today the Court holds that the civil *in rem* forfeitures here are not punishment implicating the protections of the Double Jeopardy Clause. *Ante,* at 292. I write to explain why, in my view, our holding is consistent with both *Austin* and *Libretti.*

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U. S. Const., Amdt. 5. We have interpreted the Double Jeopardy Clause to "protec[t] against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Municipal Court* v. *Lydon,* 466 U. S. 294, 306–307 (1984); *Jones* v. *Thomas,* 491 U. S. 376, 380–381 (1989).

Although there is language in our cases to the contrary, see *One 1958 Plymouth Sedan* v. *Pennsylvania,* 380 U. S. 693, 700 (1965); *Boyd* v. *United States,* 116 U. S. 616, 634 (1886), civil *in rem* forfeiture is not punishment of the wrongdoer for his criminal offense. We made this clear in *Various Items of Personal Property* v. *United States,* 282 U. S. 577 (1931), which the Court is right to deem the seminal case in this area, *ante,* at 274.

> "[This] forfeiture proceeding . . . is *in rem.* It is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient. In a criminal prosecution it is the wrongdoer in person who is proceeded against, convicted and punished. The forfeiture is no part of the punishment for the criminal offense. The provision of the Fifth Amendment to the Constitution in respect of double jeopardy does not apply." 282 U. S., at 581 (citations omitted).

Embracing the rule of *Various Items,* that the Double Jeopardy Clause applies only to *in personam* punishments of the wrongdoer and not *in rem* forfeitures, does not imply that forfeiture inflicts no punishment. Though I have expressed my doubts about the view expressed in *Austin,* 509 U. S., at 611–618, that throughout history forfeitures have been intended to punish blameworthy owners, *id.,* at 629 (opinion concurring in part and concurring in judgment); *Bennis* v. *Michigan,* 516 U. S. 442, 472–473 (1996) (dissenting opinion), I did not there question the punitive nature of § 881(a)(7), nor do I now. Under this statute, providing for the forfeiture of real property used to facilitate a drug offense, only the culpable stand to lose their property; no interest of any owner is forfeited if he can show he did not know of or consent to the crime. *Ibid.*

The key distinction is that the instrumentality-forfeiture statutes are not directed at those who carry out the crimes, but at owners who are culpable for the criminal misuse of the property. See *Austin, supra,* at 619 (statutory "exemptions serve to focus the provisions on the culpability of the owner"). The theory is that the property, whether or not illegal or dangerous in nature, is hazardous in the hands of this owner because either he uses it to commit crimes, or allows others to do so. The owner can be held accountable for the misuse of the property. Cf. *One 1958 Plymouth Sedan, supra,* at 699 ("There is nothing even remotely criminal in possessing an automobile. It is only the alleged use to which this particular automobile was put that subjects [the owner] to its possible loss"). The same rationale is at work in the statutory provisions enabling forfeiture of currency "used or intended to be used" to facilitate a criminal offense, § 881(a)(6). See also 18 U. S. C. § 981(a)(1)(A) (property involved in money-laundering transactions or attempts in violation of 18 U. S. C. § 1956). Since the punishment befalls any propertyholder who cannot claim statutory inno-

cence, whether or not he committed any criminal acts, it is not a punishment for a person's criminal wrongdoing.

Forfeiture, then, punishes an owner by taking property involved in a crime, and it may happen that the owner is also the wrongdoer charged with a criminal offense. But the forfeiture is not a second *in personam* punishment for the offense, which is all the Double Jeopardy Clause prohibits. See *ante*, at 276 ("The forfeitures were not criminal punishments because they did not impose a second *in personam* penalty for the criminal defendant's wrongdoing"); *One Lot Emerald Cut Stones* v. *United States*, 409 U. S. 232, 235 (1972) *(per curiam)* ("[T]he forfeiture is not barred by the Double Jeopardy Clause of the Fifth Amendment because it involves neither two criminal trials nor two criminal punishments").

Civil *in rem* forfeiture has long been understood as independent of criminal punishments. In *The Palmyra*, 12 Wheat. 1 (1827), we rejected a claim that a libel *in rem* required a conviction for the criminal offense charged in the libel. Distinguishing forfeitures of a felon's goods and chattels, which required proof of a conviction, we noted that the statutory *in rem* "offence is attached primarily to the thing," and that often *in rem* forfeiture was imposed in the absence of any *in personam* penalty. *Id.*, at 14. Examining American and English statutes, we concluded: "[T]he practice has been, and so this Court understand[s] the law to be, that the proceeding *in rem* stands independent of, and wholly unaffected by any criminal proceeding *in personam.*" *Id.*, at 15.

Distinguishing between *in rem* and *in personam* punishments does not depend upon, or revive, the fiction alive in *Various Items, supra*, at 581, but condemned in *Austin, supra*, at 615, n. 9, that the property is punished as if it were a sentient being capable of moral choice. It is the owner who feels the pain and receives the stigma of the forfeiture, not the property. See *United States* v. *United States Coin & Currency*, 401 U. S. 715, 718 (1971). The distinction

simply recognizes that Congress, in order to quiet title to forfeitable property in one proceeding, has structured the forfeiture action as a proceeding against the property, not against a particular defendant. Indeed, the Government will often file a forfeiture complaint without any knowledge of who the owner is. See *ante*, at 291–292. True, the forfeiture statutes require proof of a violation of a drug trafficking or other offense, but the purpose of this predicate showing is just to establish that the property was used in a crime. In contrast to criminal forfeiture, see 21 U. S. C. § 853(a), civil *in rem* forfeiture actions do not require a showing that the owner who stands to lose his property interest has committed a criminal offense. See § 881(a)(6) ("any violation of this subchapter"); § 881(a)(7) ("a violation of this subchapter"); 18 U. S. C. § 981(a)(1)(A) ("a transaction or attempted transaction in violation of" § 1956). The offenses committed by Ursery, Arlt, and Wren were proffered as evidence that the property was used in a crime, but this does not make forfeiture a punishment for those offenses. See *United States* v. *One Assortment of 89 Firearms*, 465 U. S. 354, 366 (1984) (civil forfeiture is "not an additional penalty for the commission of a criminal act").

For this reason, JUSTICE STEVENS' attempt, *post*, at 317, to rely on the same-elements test of *Blockburger* v. *United States*, 284 U. S. 299, 304 (1932), is unavailing. *Blockburger* is a misfit in this context; it compares the elements of two offenses charged against a defendant. The forfeiture cause of action is not charging a second offense of the person; it is a proceeding against the property in which proof of a criminal violation by any person will suffice, provided that some knowledge of, or consent to, the crime on the part of the property owner is also established.

In Part II–C of its opinion, the Court conducts the two-part inquiry established in *89 Firearms*, *supra*, at 362–366, as to whether, first, Congress intended the proceedings to be civil, and, second, the forfeitures are so punitive as to be

criminal in nature and therefore subject to the Double Jeopardy Clause.  *Ante*, at 288.  The test was imported by the *89 Firearms* Court from cases involving civil *in personam* penalties.  See 465 U. S., at 362 (citing *Helvering* v. *Mitchell*, 303 U. S. 391, 398–399 (1938), and *United States* v. *Ward*, 448 U. S. 242, 248 (1980)).  In the context of these cases and the precedents bearing upon them, I am not sure the test adds much to the clear rule of *Various Items* that civil *in rem* forfeiture of property involved in a crime is not punishment subject to the Double Jeopardy Clause.  As to the first prong of the test, any *in rem* proceeding is civil.  As to the second prong, so long as forfeiture hinges on the property's. use in a crime, there will always be the remedial purpose the Court identifies of preventing property owners from allowing their goods to be used for illegal purposes, *ante*, at 290.  I acknowledge *89 Firearms* to be precedent, however, and, because the Court's application of the test is consistent with *Various Items*, I join its opinion in full.

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring in the judgment.

In my view, the Double Jeopardy Clause prohibits successive prosecution, not successive punishment.  See *Department of Revenue of Mont.* v. *Kurth Ranch*, 511 U. S. 767, 798 (1994) (SCALIA, J., dissenting).  Civil forfeiture proceedings of the sort at issue here are not criminal prosecutions, even under the standard of *Kennedy* v. *Mendoza-Martinez*, 372 U. S. 144, 164 (1963), and *United States* v. *Ward*, 448 U. S. 242, 248–251 (1980).

JUSTICE STEVENS, concurring in the judgment in part and dissenting in part.

The question the Court poses is whether civil forfeitures constitute "punishment" for purposes of the Double Jeopardy Clause.  Because the numerous federal statutes authorizing forfeitures cover such a wide variety of situations, it is quite

wrong to assume that there is only one answer to that question. For purposes of analysis it is useful to identify three different categories of property that are subject to seizure: proceeds, contraband, and property that has played a part in the commission of a crime. The facts of these two cases illustrate the point.

In No. 95–346 the Government has forfeited $405,089.23 in currency. Those funds are the proceeds of unlawful activity. They are not property that respondents have any right to retain. The forfeiture of such proceeds, like the confiscation of money stolen from a bank, does not punish respondents because it exacts no price in liberty or lawfully derived property from them. I agree that the forfeiture of such proceeds is not punitive and therefore I concur in the Court's disposition of No. 95–346.

None of the property seized in No. 95–345 constituted proceeds of illegal activity. Indeed, the facts of that case reveal a dramatically different situation. Respondent Ursery cultivated marijuana in a heavily wooded area not far from his home in Shiawassee County, Michigan. The illegal substance was consumed by members of his family, but there is no evidence, and no contention by the Government, that he sold any of it to third parties. Acting on the basis of the incorrect assumption that the marijuana plants were on respondent's property, Michigan police officers executed a warrant to search the premises. In his house they found marijuana seeds, stems, stalks, and a grow light. I presume those items were seized, and I have no difficulty concluding that such a seizure does not constitute punishment because respondent had no right to possess contraband. Accordingly, I agree with the Court's opinion insofar as it explains why the forfeiture of contraband does not constitute punishment for double jeopardy purposes.

The critical question presented in No. 95–345 arose, not out of the seizure of contraband by the Michigan police, but rather out of the decision by the United States attorney to

take respondent's home. There is no evidence that the house had been purchased with the proceeds of unlawful activity and the house itself was surely not contraband. Nonetheless, 21 U. S. C. § 881(a)(7) authorized the Government to seek forfeiture of respondent's residence because it had been used to facilitate the manufacture and distribution of marijuana.[1] Respondent was then himself prosecuted for and convicted of manufacturing marijuana. In my opinion none of the reasons supporting the forfeiture of proceeds or contraband provides a sufficient basis for concluding that the confiscation of respondent's home was not punitive.

The Government has advanced four arguments in support of its position that the forfeiture of respondent's home under § 881(a)(7) followed by his prosecution under § 841(a)(1) did not violate the Double Jeopardy Clause: (1) the forfeiture was not punitive; (2) even if punitive, it was not a "jeopardy"; (3) even if both the forfeiture and the prosecution were jeopardies, they were not based on the same offense under the

---

[1] The contraband found on the premises was evidence that the building had been used to facilitate the commission of a violation of Title 21 punishable by more than one year's imprisonment. To justify that forfeiture, the Government assumed the burden of proving (a) that respondent had committed such an offense, and (b) that the property had played some part in it. The statute provides as follows:

"§ 881. Forfeitures

"(a) Subject property

"The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . . .

"(7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." § 881(a)(7).

rule of *Blockburger* v. *United States*, 284 U. S. 299 (1932); and (4) in all events, the two cases should be deemed to constitute a single proceeding for double jeopardy purposes. Because the Court addresses only the first of these arguments, I shall begin by explaining why both reason and precedent support the conclusion that the taking of respondent's home was unmistakably punitive in character. I shall then comment on the other three arguments.

## I

In recent years, both Congress and the state legislatures have armed their law enforcement authorities with new powers to forfeit property that vastly exceed their traditional tools.[2] In response, this Court has reaffirmed the funda-

---

[2] JUSTICE THOMAS has expressed his concern about both the unusual scope and the novelty of the very statute used to carry out the forfeiture in these cases:

"I am disturbed by the breadth of new civil forfeiture statutes such as 21 U. S. C. § 881(a)(7), which subjects to forfeiture *all* real property that is used, or intended to be used, in the commission, or even the *facilitation*, of a federal drug offense. As JUSTICE O'CONNOR points out, . . . since the Civil War we have upheld statutes allowing for the civil forfeiture of real property. A strong argument can be made, however, that § 881(a)(7) is so broad that it differs not only in degree, but in kind, from its historical antecedents. . . . Indeed, it is unclear whether the central theory behind *in rem* forfeiture, the fiction 'that the thing is primarily considered the offender,' *J. W. Goldsmith, Jr.-Grant Co.* v. *United States,* 254 U. S. 505, 511 (1921), can fully justify the immense scope of § 881(a)(7). Under this provision, 'large tracts of land [and any improvements thereon] which have no connection with crime other than being the location where a drug transaction occurred,' Brief for Respondents 20, are subject to forfeiture. It is difficult to see how such real property is necessarily in any sense 'guilty' of an offense, as could reasonably be argued of, for example, the distillery in *Dobbins's Distillery* v. *United States,* 96 U. S. 395 (1878), or the pirate vessel in *Harmony* v. *United States,* 2 How. 210 (1844). Given that current practice under § 881(a)(7) appears to be far removed from the legal fiction upon which the civil forfeiture doctrine is based, it may be necessary—in an appropriate case—to reevaluate our generally deferential approach to legislative judgments in this area of civil forfeiture." *United*

mental proposition that all forfeitures must be accomplished within the constraints set by the Constitution. See, *e. g.*, *Austin* v. *United States*, 509 U. S. 602 (1993); *United States* v. *James Daniel Good Real Property*, 510 U. S. 43 (1993). This Term the Court has begun dismantling the protections it so recently erected. In *Bennis* v. *Michigan*, 516 U. S. 442 (1996), the Court held that officials may confiscate an innocent person's automobile. And today, for the first time, it upholds the forfeiture of a person's home. On the way to its surprising conclusion that the owner is not punished by the loss of his residence, the Court repeatedly professes its adherence to tradition and time-honored practice. As I discuss below, however, the decision shows a stunning disregard not only for modern precedents but for our older ones as well.

In the Court's view, the seminal case is *Various Items of Personal Property* v. *United States*, 282 U. S. 577 (1931), which approved the forfeiture of an illegal distillery by resort to the "legal fiction" that the distillery rather than its owner was being punished "as though it were conscious instead of inanimate and insentient." *Id.*, at 581. Starting from that fanciful premise, the Court was able to conclude that confiscating the property after the owner was prosecuted for the underlying violations of the revenue laws did not offend the Double Jeopardy Clause.

According to the Court, *Various Items* established a categorical rule that the Double Jeopardy Clause was "inapplicable to civil forfeiture actions." *Ante*, at 274. The Court asserts that this rule has received "remarkably consistent" application and was "reaffirmed" by a pair of cases in 1972 and 1984. *Ante*, at 278, 276. In reality, however, shortly after its announcement, *Various Items* simply disappeared from our jurisprudence. We cited that case in only two decisions over the next seven years, and never again in

States v. James Daniel Good Real Property, 510 U. S. 43, 81–82 (1993) (opinion concurring in part and dissenting in part) (footnotes omitted).

nearly six decades. Neither of the two cases that supposedly "affirmed" *Various Items—One Lot Emerald Cut Stones* v. *United States,* 409 U. S. 232 (1972) *(per curiam),* and *United States* v. *One Assortment of 89 Firearms,* 465 U. S. 354 (1984)—even mentioned it.

More important, neither of those cases endorsed the asserted categorical rule that civil forfeitures never give rise to double jeopardy rights. Instead, each carefully considered the nature of the particular forfeiture at issue, classifying it as either "punitive" or "remedial," before deciding whether it implicated double jeopardy. *Emerald Cut Stones* concerned a customs statute that authorized confiscation of certain merchandise, in that case jewelry, that had been smuggled into the United States. The Court explained that the purpose of the statute was to remove such items from circulation, and that the penalty amounted to a reasonable liquidated damages award to reimburse the Government for the costs of enforcement and investigation. In those respects, therefore, it constituted a "remedial rather than punitive sanctio[n]." 409 U. S., at 237. In *89 Firearms,* the Court explored in even greater detail the character of a federal statute that forfeited unregistered firearms. It reasoned that the sanction "further[ed] broad remedial aims" in preventing commerce in such weapons, and also covered a broader range of conduct than simply criminal behavior. 465 U. S., at 364. For those reasons, it was not properly characterized as a punitive sanction.

The majority, surprisingly, claims that *Austin* v. *United States,* 509 U. S. 602 (1993), "expressly recognized and approved" those decisions. *Ante,* at 286. But the Court creates the appearance that we endorsed its interpretation of *89 Firearms* and *Emerald Cut Stones* by quoting selectively from *Austin.* We actually stated the following:

> "The Double Jeopardy Clause has been held not to apply in civil forfeiture proceedings, *but only in cases*

*where the forfeiture could properly be characterized as remedial.* See *United States* v. *One Assortment of 89 Firearms,* 465 U. S. 354, 364 (1984); *One Lot Emerald Cut Stones* v. *United States,* 409 U. S. 232, 237 (1972); see generally *United States* v. *Halper,* 490 U. S. 435, 446–449 (1989) (Double Jeopardy Clause prohibits second sanction that may not fairly be characterized as remedial)." 509 U. S., at 608, n. 4 (emphasis added).

In reality, both cases rejected the monolithic view that all *in rem* civil forfeitures should be treated the same, and recognized the possibility that other types of forfeitures that could not "properly be characterized as remedial" might constitute "an additional penalty for the commission of a criminal act." 465 U. S., at 366.

That possibility was not merely speculative. The Court had already decided that other constitutional protections applied to forfeitures that had a punitive element. In *Boyd* v. *United States,* 116 U. S. 616 (1886), the Court held that compulsory production of an individual's private papers for use in a proceeding to forfeit his property for alleged fraud against the revenue laws violated both the Fourth Amendment and the Fifth Amendment's Self-Incrimination Clause. As the Court stated: "[P]roceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offences committed by him, though they may be civil in form, are in their nature criminal" and thus give rise to these constitutional safeguards. *Id.,* at 634.

We reaffirmed *Boyd* twice during the span of time between our decisions in *Various Items* and *89 Firearms.* In *One 1958 Plymouth Sedan* v. *Pennsylvania,* 380 U. S. 693 (1965), the Court unanimously repeated *Boyd's* conclusion that "a forfeiture proceeding is quasi-criminal in character" and "[i]ts object, like a criminal proceeding, is to penalize for the commission of an offense against the law." The Court therefore held that the Fourth Amendment applied to a pro-

ceeding to forfeit an automobile used to transport illegally manufactured liquor. 380 U. S., at 700.

Even more significant is *United States* v. *United States Coin & Currency*, 401 U. S. 715 (1971), in which the Court again held that the Fifth Amendment applied to forfeiture proceedings. *Coin & Currency* involved the confiscation of gambling money under a statute, quite similar to 21 U. S. C. § 881, providing that " '[i]t shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws . . . and no property rights shall exist in any such property.'" 401 U. S., at 716 (quoting 26 U. S. C. § 7302). The Court held that the Fifth Amendment barred the Government's attempt to introduce evidence of the defendant's failure to file required tax forms against him in the forfeiture proceeding. Following *Boyd*, the Court explained that the form of the proceeding as civil or criminal could not have any bearing on the rights that attached when the sanction was a penalty. "From the relevant constitutional standpoint, there is no difference between a man who 'forfeits' $8,674 because he has used the money in illegal gambling activities and a man who pays a 'criminal fine' of $8,674 as a result of the same course of conduct." 401 U. S., at 718. In each case, the Court reasoned, the liability derives from the same offense of the owner; hence, "the Fifth Amendment applies with equal force." *Ibid.*

*Emerald Cut Stones* expressly recognized the continuing validity of *Coin & Currency* and *One 1958 Plymouth Sedan*. It distinguished the customs statute in that case because the forfeiture did not depend on the fact of a criminal offense or conviction. See 409 U. S., at 236, n. 6. See also *United States* v. *Ward*, 448 U. S. 242, 254 (1980) (discussing *Boyd*). That recognition is critical. For whatever its connection to the Excessive Fines Clause of the Eighth Amendment, the Double Jeopardy Clause is part of the same Amendment as the Self-Incrimination Clause, and ought to be interpreted

*in pari materia*.[3]   By confining its holding to civil forfeitures fairly characterized as remedial, and by distinguishing cases that had applied the Fifth Amendment to other types of forfeitures, *Emerald Cut Stones* and *89 Firearms* recognized the possibility that the Double Jeopardy Clause might apply to certain punitive civil forfeiture proceedings.   One of the mysteries of the Court's opinion is that although it claims that civil *in rem* forfeiture cannot be understood as punishment, it devotes Part II–C to examining the actual purposes of the forfeiture in these cases and "proving" that they are not punitive.   If the Court truly adhered to the logic of its position, that entire section would be unnecessary.

Read properly, therefore, *89 Firearms* and *Emerald Cut Stones* are not inconsistent with, but set the stage for, the modern understanding of how the Double Jeopardy Clause applies in nominally civil proceedings.   That understanding has been developed in a trio of recent decisions: *United States* v. *Halper*, 490 U. S. 435 (1989), *Austin* v. *United States*, 509 U. S. 602 (1993), and *Department of Revenue of Mont.* v. *Kurth Ranch*, 511 U. S. 767 (1994).   The Court of Appeals found that the combined effect of two of those decisions—*Halper* and *Austin*—established the proposition that forfeitures under 21 U. S. C. § 881(a)(7) implicated double jeopardy.   This Court rejects that conclusion, asserting that none of these cases changed the "oft-affirmed rule" of *Various Items*.   *Ante*, at 279.

It is the majority, however, that has "misread" *Halper*, *Austin*, and *Kurth Ranch* by artificially cabining each to a separate sphere, see *ante*, at 288, and treating the three as if they concerned unrelated subjects.   In fact, all three were devoted to the common enterprise of giving meaning to the idea of "punishment," a concept that plays a central role in

---

[3] If anything, the Double Jeopardy Clause ought to apply to a *broader* set of proceedings than the Self-Incrimination Clause.   While the latter applies only in a "criminal case," the former concerns any type of "jeopardy," presumably a larger class of situations.   See U. S. Const., Amdt. 5.

the jurisprudence of both the Excessive Fines Clause and the Double Jeopardy Clause. *Halper* laid down a general rule for applying the Double Jeopardy Clause to civil proceedings:

> "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. . . . We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." 490 U. S., at 448–449.

In the past seven years, we have applied that same rule to three types of sanctions: civil penalties, civil forfeitures, and taxes.

The first was the subject of *Halper* itself. The defendant had been convicted for submitting 65 false claims for reimbursement (seeking $12 for each, when the actual services rendered entitled him to only $3) to a Medicare provider, and sentenced to imprisonment for two years and a $5,000 fine. The Government then brought a civil action against him for the same offenses. The penalty for violating the civil false-claims statute consisted of double the Government's damages plus court costs and a fixed fine of $2,000 per false claim. See *id.*, at 438. Accordingly, the Government sought a penalty of $130,000, although the defendant's fraud had caused an actual loss of only $585. Applying the definition of "punishment" given above, the Court first held that the fixed $2,000 fine served a remedial purpose because it was designed to compensate the Government "roughly" for the costs of law enforcement and investigation. *Id.*, at 445. Despite finding that the fine was not by nature punitive, the

Court went on to consider whether the sanction "as applied in the individual case," *id.*, at 448, amounted to punishment. It answered that question in the affirmative, for the applied sanction created a "tremendous disparity" with the amount of harm the defendant actually caused. *Id.*, at 452. The Court explained that, as a rule, a fixed penalty that would otherwise serve remedial ends could still punish the defendant if the imposed amount was out of all proportion to the damage done.[4]

The second category of sanctions—civil forfeitures—was the subject of *Austin*. In that case, the Government sought to forfeit the petitioner's mobile home and auto body shop as instrumentalities of the drug trade under 21 U. S. C. §§ 881(a)(4) and (a)(7) because he had sold cocaine there. Applying *Halper*'s definition of punishment, see 509 U. S., at 610, 621, we held that §§ 881(a)(4) and (a)(7) must be considered to qualify as such, partly because forfeitures have historically been understood as punishment and more importantly because no remedial purpose underlay the sanction the statute created. Merely compensating the Government for its costs, as in *Halper*, could not justify the forfeiture scheme because "[t]he value of the conveyances and real property forfeitable under §§ 881(a)(4) and (a)(7) . . . can vary so dramatically that any relationship between the Government's actual costs and the amount of the sanction is merely coincidental." 509 U. S., at 622, n. 14. Accordingly, we held that any forfeiture was subject to the constraints of the Excessive Fines Clause of the Eighth Amendment.

---

[4] The Court stated the full rule as follows: "Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment." *United States v. Halper*, 490 U. S. 435, 449–450 (1989).

The Court expends a great deal of effort attempting to distinguish *Austin* away as purely an excessive fines case. The Court states, for example, that it is "difficult to see" how one would apply the "rule of *Halper*" to a civil forfeiture such as was present in *Austin*. *Ante*, at 283. But the Court conflates the two different rules that *Halper* announced. As discussed above, *Austin* expressly quoted *Halper* and followed its general rule that a sanction should be characterized as "punishment" if it serves any punitive end. See 509 U. S., at 610, 621. It relegated to a footnote *Halper*'s narrower rule—the one for the "rare case," which requires an accounting of the Government's damages and costs—because it had already decided that the statute was of a punitive character. 509 U. S., at 622, n. 14. That approach was perfectly appropriate. There is no need to determine whether a statute that is punitive by design has a punitive effect when applied in the individual case. *Halper* is entirely consistent with *Austin*, because it determined first that the sanction there generally did *not* have a punitive character before it considered whether some applications might be punitive nonetheless.[5]

The majority implies that *Austin*'s "categorical approach" is somehow suspect as an application of double jeopardy jurisprudence, *ante*, at 286–287, but *Kurth Ranch* definitively refutes that suggestion. The sanction there was a tax imposed on marijuana and applied to a taxpayer who had already been prosecuted for ownership of the drugs sought to be taxed. Again applying *Halper*'s definition of punishment, see 511 U. S., at 779–780, we considered the nature of the tax, focusing on several unusual features that distinguished it from ordinary revenue-raising provisions, and con-

---

[5] Even if *Austin* had not followed *Halper*'s rule for defining punishment, it would make little sense to say that forfeiture might be punishment "for the purposes of" the Excessive Fines Clause but not the Double Jeopardy Clause. It is difficult to imagine why the Framers of the two Amendments would have required a particular sanction not to be excessive, but would have allowed it to be imposed multiple times for the same offense.

cluded that it was motivated by a "penal and prohibitory intent." *Id.*, at 781 (internal quotation marks omitted).[6] On that basis, we held that imposition of the tax after criminal prosecution of the taxpayer violated double jeopardy. The approach taken was thus identical to that followed in *Austin*. By considering and rejecting each of the asserted "remedial" interests served by the sanction, we reasoned that the tax had an "unmistakable punitive character" that rendered it punishment in all of its applications. 511 U. S., at 783.

The claim that *Halper*'s "case-by-case" method is "impossible to apply" to forfeitures or taxes, *ante*, at 284, 285, thus misses the point. It is true that since fixed penalties can serve only one remedial end (compensation), it is easy to determine whether a particular fine is punitive in application. Forfeitures and taxes, generally speaking, may have a number of remedial rationales. But to decide if a sanction is punitive, one need only examine each claimed remedial interest and determine whether the sanction actually promotes it. Many of our cases have followed just such an approach, regardless of whether any nonpunitive purpose can be "quantif[ied]," *ante*, at 284. See, *e. g.*, *Austin; One 1958 Plymouth Sedan*. The majority itself embarks on such an inquiry in Part II–C of its opinion. Furthermore, even in the context of forfeitures and taxes, nothing prevents a court from deciding that although a sanction is designed to be remedial, its application in a particular case is so extreme as to constitute punishment. *Austin*, 509 U. S., at 608, n. 4.[7]

---

[6] Specifically, the tax was conditioned on the commission of a crime, 511 U. S., at 781, and it was levied on goods that the taxpayer did not own or possess at the time of imposition, *id.*, at 783.

[7] It is true, as the Court asserts, that a fine will only be considered "excessive" if it is disproportionate to any remedial goal. But *Austin* established that a forfeiture can also be excessive, although it could serve multiple remedial goals. Hence, I do not understand why the Court maintains that *Austin* did not prove that forfeitures are punitive. In order to count as a "fine" in the first place, a forfeiture must be capable of being punitive. A penalty that is not a "fine" cannot violate the Excessive Fines

In reaching the conclusion that the civil forfeiture at issue yielded punishment, the *Austin* Court surveyed the history of civil forfeitures at some length. That history is replete with expressions of the idea that forfeitures constitute punishment.[8] But it was not necessary in *Austin*, strictly speaking, to decide that all *in rem* forfeitures are punitive. As JUSTICE SCALIA emphasized in his separate opinion, it was only necessary to characterize the specific *"in rem* forfeiture in *this* case." *Id.*, at 626 (opinion concurring in part and concurring in judgment). The punitive nature of §§ 881(a)(4) and (a)(7) was accepted by every Member of the *Austin* Court. The majority offered several reasons for its holding. The applicable provisions expressly provided an "innocent owner" defense, indicating that culpability was a requirement for forfeiture. Further, the provisions tied forfeiture directly to the commission of narcotics offenses. *Id.*, at 620. Finally, the legislative history indicated that the provisions were necessary because traditional criminal sanctions were " 'inadequate to deter or punish.' " *Ibid.* (quoting S. Rep. No. 98–225, p. 191 (1983)). In sum, it was unanimously agreed that "[s]tatutory forfeitures under § 881(a) are certainly *payment* (in kind), *to a sovereign* as *punishment* for an *offense.*" 509 U. S., at 626–627 (SCALIA, J., concurring in part and concurring in judgment) (emphasis in original).[9]

Remarkably, the Court today stands *Austin* on its head—a decision rendered only three years ago, with unanimity on

---

Clause, no matter how "excessive." See *Browning-Ferris Industries of Vt., Inc.* v. *Kelco Disposal, Inc.*, 492 U. S. 257 (1989).

[8] See, *e. g.*, *Peisch* v. *Ware*, 4 Cranch 347, 364 (1808) (Marshall, C. J.) ("[T]he act punishes the owner with a forfeiture of the goods"); *J. W. Goldsmith, Jr.-Grant Co.* v. *United States*, 254 U. S. 505, 510–511 (1921) (the owner of an automobile confiscated for its use in transporting liquor during Prohibition is " 'properly punished by such forfeiture' ") (quoting 1 W. Blackstone, Commentaries *301).

[9] Just this Term, we have reiterated this conclusion. See *Libretti* v. *United States*, 516 U. S. 29, 39 (1995) ("[T]he *in rem* civil forfeiture authorized by 21 U. S. C. §§ 881(a)(4) and (a)(7) is punitive in nature").

the pertinent points—and concludes that § 881(a)(7) is reme-
dial rather than punitive in character.  Every reason *Austin*
gave for treating § 881(a)(7) as punitive—the Court rejects
or ignores.  Every reason the Court provides for treating
§ 881(a)(7) as remedial—*Austin* rebuffed.  The Court claims
that its conclusion is consistent with decisions reviewing
statutes "indistinguishable" "in most significant respects"
from § 881(a)(7), *ante*, at 290, but ignores the fact that *Austin*
reached the opposite conclusion as to the *identical* statute
under review here.

First, the Court supposes that forfeiture of respondent's
house is remedial in nature because it was an instrumental-
ity of a drug crime.  It is perfectly conceivable that certain
kinds of instruments used in the commission of crimes could
be forfeited for remedial purposes.  Items whose principal
use is illegal—for example, the distillery in *Various Items*—
might be thus forfeitable.  But it is difficult to understand
how a house in which marijuana was found helped to sub-
stantially "facilitate" a narcotics offense, or how forfeiture
of that house will meaningfully thwart the drug trade.  In
*Austin*, we rejected the argument that a mobile home and
body shop were "instruments" of drug trafficking simply be-
cause marijuana was sold out of them.  I see no basis for a
distinction here.[10]

Second, the Court claims that the statute serves the pur-
pose of deterrence, which helps to show that it is remedial
rather than punitive in character.  *Ante*, at 292.  That state-
ment cannot be squared with our precedents.  *Halper* ex-

---

[10] The Court also speculates that nuisance abatement may provide a re-
medial interest.  *Ante*, at 290–291.  The abatement theory was question-
able enough in *Bennis* v. *Michigan*, 516 U. S. 442 (1996), where under the
State's theory the same acts might or might not turn an ordinary automo-
bile into a nuisance, depending on the neighborhood in which the car hap-
pened to be parked.  See *id.*, at 464, n. 9 (STEVENS, J., dissenting).  Here,
there is no argument that Ursery's home constituted some kind of a
nuisance.

pressly held, and *Austin* and *Kurth Ranch* reaffirmed, that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment" for purposes of the Double Jeopardy Clause. 490 U. S., at 448. "'Retribution and deterrence are *not legitimate nonpunitive governmental objectives.'*" *Ibid.* (emphasis added) (quoting *Bell* v. *Wolfish*, 441 U. S. 520, 539, n. 20 (1979)). To say otherwise is to renounce *Halper's* central holding. If deterrence is a legitimate remedial rationale "distinct from" any punitive purpose, *ante*, at 292, then the $130,000 fine in *Halper* could not be condemned as excessive because it plainly served a powerful deterrent function. It was a *premise* of the Court's analysis in that case that deterrence could not justify a penal sanction. As in *Bennis* v. *Michigan*, where the Court first announced this new view of deterrence, it simply ignores *Halper* without explanation or comment. See 516 U. S., at 468–469 (STEVENS, J., dissenting).

For good measure, the Court also rejects two considerations that persuaded the majority in *Austin* to find 21 U. S. C. § 881(a)(7) a punitive statute. The Court first asserts that the statute contains no scienter requirement and property may be forfeited summarily if no one files claim to it. *Ante*, at 291–292 (citing 19 U. S. C. § 1609). Property that is not claimed, however, is considered abandoned; it proves nothing that the Government is able to forfeit property that no one owns. Any time the Government seeks to forfeit claimed property, it must prove that the claimant is culpable, for the statute contains an express "innocent owner" exception. Today the Court finds the structure of the statute irrelevant, but *Austin* said that the exemption for innocent owners "makes [the statute] look more like punishment." 509 U. S., at 619. In *United States* v. *United States Coin & Currency*, 401 U. S. 715 (1971), the Court

found a forfeiture statute punitive on the basis of *discretionary* authority granted to the Secretary of the Treasury to remit property to innocent owners that was provided by a *different* statute.

Finally, the Court announces that the fact that the statute is "tied to criminal activity" is insufficient to render it punitive. *Ante*, at 292. *Austin* expressly relied on Congress' decision to "tie forfeiture directly to the commission of drug offenses" as evidence that it was intended to be punitive. 509 U.,S., at 620.[11]

The recurrent theme of the Court's opinion is that there is some mystical difference between *in rem* and *in personam* proceedings, such that only the latter can give rise to double jeopardy concerns. The Court claims that "[s]ince at least *Various Items*," we have drawn this distinction for purposes of applying relevant constitutional provisions. *Ante*, at 283. That statement, however, is incorrect. We have repeatedly rejected the idea that the nature of the court's jurisdiction has any bearing on the constitutional protections that apply at a proceeding before it. "From the relevant constitutional standpoint, there is no difference between a man who 'forfeits' $8,674 because he has used the money in illegal gambling activities and a man who pays a 'criminal fine' of $8,674 as a result of the same course of conduct." *Coin & Currency*, 401 U. S., at 718. See also *One 1958 Plymouth Sedan*, 380 U. S., at 701, n. 11; *Boyd*, 116 U. S., at 638.[12] Most re-

---

[11] Apparently recognizing the difficulty of reconciling its analysis of § 881(a)(7) with *Austin*'s, the Court admits that the statute "perhaps ha[s] certain punitive aspects," but finds them outweighed by its "important nonpunitive goals." *Ante*, at 290. Again, that approach simply repudiates *Halper*, which defined as punishment for purposes of the Double Jeopardy Clause any sanction that "cannot fairly be said *solely* to serve a remedial purpose." 490 U. S., at 448 (emphasis added).

[12] "[A]lthough the owner of goods, sought to be forfeited by a proceeding *in rem*, is not the nominal party, he is, nevertheless, the substantial party to the suit; he certainly is so, after making claim and defence; and, in a

cently, in our application of *Halper*'s definition of punishment, we stated that "[w]e do not understand the Government to rely separately on the technical distinction between proceedings *in rem* and proceedings *in personam,* but we note that any such reliance would be misplaced." *Austin,* 509 U. S., at 615, n. 9.[13]

The notion that the label attached to the proceeding is dispositive runs contrary to the trend of our recent cases. In *Halper* we stated that "the labels 'criminal' and 'civil' are not of paramount importance" in determining whether a proceeding punishes an individual. 490 U. S., at 447. In *Kurth Ranch* we held that the Double Jeopardy Clause applies to punitive proceedings even if they are labeled a tax. Indeed, in reaching that conclusion, we followed a 1931 decision that noted that a tax statute might be considered punitive for double jeopardy purposes.[14] It is thus far too late in the day to contend that the label placed on a punitive proceeding determines whether it is covered by the Double Jeopardy Clause.

---

case like the present, he is entitled to all the privileges which appertain to a person who is prosecuted for a forfeiture of his property by reason of committing a criminal offence." *Boyd,* 116 U. S., at 638.

[13] The Court suggests that the decision in *One Lot Emerald Cut Stones* v. *United States,* 409 U. S. 232 (1972), rested on the fact that the second penalty was *"in personam,"* ante, at 276, but the opinion of the Court did not even mention that term. In *United States* v. *One Assortment of 89 Firearms,* 465 U. S. 354 (1984), the Court discussed the fact that the forfeiture was *in rem,* but only for the rather obvious point that Congress intended the proceeding to be "civil."

[14] "That case, *United States* v. *La Franca,* 282 U. S. 568 (1931), observed that the words 'tax' and 'penalty' 'are not interchangeable, one for the other' and that 'if an exaction be clearly a penalty it cannot be converted into a tax by the simple expedient of calling it such.' *Id.,* at 572. See also *Lipke* v. *Lederer,* 259 U. S. 557, 561 (1922) ('The mere use of the word "tax" in an act primarily designed to define and suppress crime is not enough to show that within the true intendment of the term a tax was laid')." *Department of Revenue of Mont.* v. *Kurth Ranch,* 511 U. S. 767, 777, n. 15 (1994).

The pedantic distinction between *in rem* and *in personam* actions is ultimately only a cover for the real basis for the Court's decision: the idea that the property, not the owner, is being "punished" for offenses of which it is "guilty." Although the Court prefers not to rely on this notorious fiction too blatantly, its repeated citations to *Various Items* make clear that the Court believes respondent's home was "guilty" of the drug offenses with which he was charged. See *ante,* at 283. On that rationale, of course, the case is easy. The *owner* of the property is not being punished when the Government confiscates it, just the *property.* The same sleight-of-hand would have worked in *Austin,* too: The owner of the property is not being excessively fined, just the property itself. Despite the Government's heavy reliance on that fiction in *Austin,* we did not allow it to stand in the way of our holding that the seizure of property may punish the owner.[15]

Even if the point had not been settled by prior decisions, common sense would dictate the result in this case. There is simply no rational basis for characterizing the seizure of this respondent's home as anything other than punishment for his crime. The house was neither proceeds nor contraband and its value had no relation to the Government's authority to seize it. Under the controlling statute an essential predicate for the forfeiture was proof that respondent

---

[15] Long ago the Court cast doubt on this fiction:

"But where the owner of the property has been admitted as a claimant, we cannot see the force of this distinction; nor can we assent to the proposition that the proceeding is not, in effect, a proceeding against the owner of the property, as well as against the goods; for it is his breach of the laws which has to be proved to establish the forfeiture, and it is his property which is sought to be forfeited . . . . In the words of a great judge, 'Goods, as goods, cannot offend, forfeit, unlade, pay duties, or the like, but men whose goods they are.'*

"* . . . Vaughan, C. J., in *Sheppard* v. *Gosnold,* Vaugh. 159, 172, approved by Ch. Baron Parker in *Mitchell qui tam* v. *Torup,* Parker, 227, 236." *Boyd* v. *United States,* 116 U. S., at 637, and n.

had used the property in connection with the commission of a crime. The forfeiture of this property was unquestionably "a penalty that had absolutely no correlation to any damages sustained by society or to the cost of enforcing the law." *United States* v. *Ward,* 448 U. S., at 254. As we unanimously recognized in *Halper,* formalistic distinctions that obscure the obvious practical consequences of governmental action disserve the "'humane interests'" protected by the Double Jeopardy Clause. 490 U. S., at 447, quoting *United States ex rel. Marcus* v. *Hess,* 317 U. S. 537, 554 (1943) (Frankfurter, J., concurring). Fidelity to both reason and precedent dictates the conclusion that *this forfeiture* was "punishment" for purposes of the Double Jeopardy Clause.[16]

## II

The Government also argues that the word "jeopardy" refers only to a criminal proceeding, and that our cases precluding two punishments for the same offense apply only to situations in which the first punishment was imposed after conviction of a crime. In this case the civil forfeiture proceeding antedated the filing of the criminal charge. Since the civil case was not a "jeopardy," the argument runs, the criminal case was the first, rather than the second, jeopardy. This argument is foreclosed by our decisions in *Halper* and *Kurth Ranch.*

Although the point was not expressly mentioned in either case, both holdings necessarily rested on the assumption that the civil proceeding in which the second punishment was imposed was a "jeopardy" within the meaning of the Fifth

---

[16] As I have emphasized, the determination that 21 U. S. C. § 881(a)(7) is a punitive statute is perfectly consistent with a conclusion that other types of sanctions are remedial. For example, I would expect that many types of administrative licensing sanctions are remedial in the relevant sense of our cases. See Comment, Administrative Driver's License Suspension: A Remedial Tool That is Not in Jeopardy, 45 Am. U. L. Rev. 1151 (1996) (arguing that suspension of a driver's license after conviction for drunken driving is a remedial sanction under the logic of *Halper, Austin,* and *Kurth Ranch).*

Amendment. Otherwise there would have been no basis for concluding that the defendants had been "twice put in jeopardy" as the text of the Clause forbids. The prohibition against two such proceedings cannot depend on the order in which they are filed. Cf. *Kurth Ranch*, 511 U. S., at 804 (SCALIA, J., dissenting) ("[I]f there is a constitutional prohibition on multiple punishments, the order of punishment cannot possibly make any difference").

## III

The Government's third argument is that the civil forfeiture and the criminal proceeding did not involve the same offense. The Government relies principally on *Blockburger* v. *United States*, 284 U. S. 299 (1932), in which we held that for double jeopardy purposes two statutes define different offenses if "each provision requires proof of a fact which the other does not." *Id.*, at 304. The application of that test would avoid any double jeopardy objection to a forfeiture followed by a prosecution—or a prosecution followed by a forfeiture—whenever the seizure could be supported without proof that the defendant committed a crime and the conviction did not require proof that the forfeited property had been used illegally.

Thus, if instead of forfeiting Ursery's home the Government had decided to forfeit his neighbor's property where the marijuana was grown, the *Blockburger* rule would avoid any double jeopardy objection to either the forfeiture or respondent's prosecution. In that scenario, the forfeiture could be supported without proof that Ursery violated the law and Ursery could be convicted without proof that he harvested the marijuana on property owned by someone else.

The rule does, however, bar this conviction because the elements that the Government was required to allege and prove to sustain the forfeiture of Ursery's home under § 881(a)(7) included each of the elements of the offense for which he was later convicted. As in *Illinois* v. *Vitale*, 447 U. S. 410 (1980), and *Harris* v. *Oklahoma*, 433 U. S. 682

(1977) *(per curiam)*, the fact that the "greater" offense (here, the forfeiture) could have been proved by means of a different "lesser" offense does not negate the fact that in this instance it *was* proved by resort to the same elements as the criminal offense. This conclusion also accords with our oft-repeated understanding of the relationship between a civil forfeiture and the underlying offense. See, *e. g., One 1958 Plymouth Sedan*, 380 U. S., at 701 ("[T]he forfeiture is clearly a penalty for the criminal offense"); *Boyd*, 116 U. S., at 634 (describing sanction as "proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offences committed by him"). Accordingly, under the analysis we unanimously applied most recently in *Rutledge* v. *United States*, 517 U. S. 292 (1996), the criminal charge was a lesser included offense of the forfeiture and therefore constituted a second jeopardy.

JUSTICE KENNEDY joins the Court's opinion and therefore ought to agree with the majority that civil forfeitures do not constitute punishment for purposes of the Double Jeopardy Clause. In fact, however, he recognizes that "[f]orfeiture . . . punishes an owner by taking property involved in a crime." *Ante*, at 295. His real objection is that a forfeiture does not punish for the same offense as the underlying criminal conviction.

JUSTICE KENNEDY theorizes that civil forfeiture punishes for the misuse of property. *Ante*, at 294. It might be true that some forfeiture statutes are best described as creating a sanction for misuse, as opposed to (but perhaps in addition to) a sanction for the substantive criminal offense. But, again, this statute is not structured that way. Section 881(a)(7) incorporates the criminal offense itself as the predicate for the forfeiture. See 21 U. S. C. § 881(a)(7) (subjecting to forfeiture "[a]ll real property . . . which is used . . . to commit . . . a violation of this subchapter punishable by more than one year's imprisonment"). Furthermore, the innocent owner exemption in the same subsection provides that "no

property shall be forfeited under this paragraph . . . *by reason of any act or omission* established by that owner to have been committed or omitted without the knowledge or consent of that owner." *Ibid.* (emphasis added). In *Austin,* we held that the exemption revealed a "congressional intent to punish only those involved in drug trafficking" because " 'the traditional criminal sanctions . . . are inadequate to deter or punish the enormously profitable trade in dangerous drugs.' " 509 U. S., at 619, 620 (quoting S. Rep. No. 98–225, at 191). See also 509 U. S., at 628 (SCALIA, J., concurring in part and concurring in judgment) (suggesting that proportionality of a forfeiture be measured by the relationship of the property to the underlying offense). Again, these statements accord with common sense: Forfeiting respondent's house punished him for the same narcotics violations as his criminal conviction.

## IV

The final argument advanced by the Government is that the forfeiture and the criminal conviction should be treated as having occurred in the same proceeding because both were commenced before a final judgment was entered in either. Emphasizing the fact that the Double Jeopardy Clause, and particularly the prohibition against multiple punishments for the same offense, protects the defendant's legitimate expectation of finality in the original sentence, the Government maintains that such an expectation could not arise until after one proceeding was completed. Moreover, it argues, the civil and criminal sanctions "cannot be (and never have been) joined together in a single trial under our system of justice." Brief for United States 55.

This argument is unpersuasive because it is simply inaccurate to describe two separate proceedings as one.[17] I also cannot agree with the Government's view that there is any

---

[17] In *Kurth Ranch* we explicitly noted that the tax assessment and the prosecution were "separate legal proceedings." 511 U. S., at 772.

procedural obstacle to including a punitive forfeiture in the final judgment entered in a criminal case. The sentencing proceeding does not commence until after the defendant has been found guilty, and I do not see why that proceeding should not encompass all of the punitive sanctions that are warranted by the conviction. Indeed, a draft of a proposed amendment to the Federal Rules of Criminal Procedure envisions precisely that procedure. See Fed. Rule Crim. Proc. 32(d)(2) (eff. Dec. 1, 1996).[18] If, as we have already determined, the "civil" forfeitures pursuant to § 881(a)(7) are in fact punitive, a single judgment encompassing the entire punishment for the defendant's offense is precisely what the Double Jeopardy Clause requires. Congress' decision to create novel and additional penalties should not be permitted to eviscerate the protection against governmental overreaching embodied in the Double Jeopardy Clause. That protection has far deeper roots than the relatively recent enactments that have so dramatically expanded the sovereign's power to forfeit private property.

*　　*　　*

One final example may illustrate the depth of my concern that the Court's treatment of our cases has cut deeply into a guarantee deemed fundamental by the Founders. The Court relies heavily on a few early decisions that involved the forfeiture of vessels whose entire mission was unlawful and on the Prohibition-era precedent sustaining the forfeiture of a distillery—a property that served no purpose other than the manufacture of illegal spirits. Notably none of those early cases involved the forfeiture of a home as a form

---

[18] According to the Rule, once there is a finding that property is subject to a criminal forfeiture, the court may enter a preliminary forfeiture order. The order also authorizes the Attorney General to seize the property, conduct any necessary discovery, and begin proceedings to protect the rights of third parties. The order of forfeiture becomes a part of the sentence and is included in the judgment.

of punishment for misconduct that occurred therein.  Consider how drastic the remedy would have been if Congress in 1931 had authorized the forfeiture of every home in which alcoholic beverages were consumed.  Under the Court's reasoning, I fear that the label "civil," or perhaps "*in rem*," would have been sufficient to avoid characterizing such forfeitures as "punitive" for purposes of the Double Jeopardy Clause.  Our recent decisions in *Halper, Austin,* and *Kurth Ranch* dictate a far different conclusion.  I remain persuaded that those cases were correctly decided and should be followed today.

Accordingly, I respectfully dissent from the judgment in No. 95–345.