103 F.3d 130
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Billy McMULLIN, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 96-5177.
 United States Court of Appeals, Sixth Circuit.
 Nov. 19, 1996.
 
 Before: MARTIN, Chief Judge, and MERRITT and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from the denial of a 28 U.S.C. § 2255 motion in which a federal prisoner, petitioner Billy McMullin, sought to have his sentence vacated on double jeopardy and due process grounds. The Supreme Court's recent decision in United States v. Ursery, 116 S.Ct. 2135 (1996), dooms the double jeopardy claim. We do not find the due process claim persuasive either, and we shall affirm the district court's denial of the relief sought.
 
 
 2
 * Suspected of illegal drug dealing and other crimes, Billy McMullin became the subject of an investigation that ultimately led to the forfeiture of several of his automobiles and other personal property and a parcel of real estate he owned. Mr. McMullin filed no claim in the forfeiture proceedings.
 
 
 3
 A grand jury sitting in the Middle District of Tennessee subsequently indicted Mr. McMullin on a variety of criminal charges. He then entered into a plea bargain pursuant to which he pleaded guilty to a count of the indictment in which he was charged with engaging in a continuing criminal enterprise.
 
 
 4
 The plea agreement stated that "a sentence of 20 years is agreed upon and will be imposed by the United States District Court for the Middle District of Tennessee." The agreement further provided that "the government will not file any Rule 35 motion for Correction of Sentence."
 
 
 5
 The United States District Court for the Middle District of Tennessee sentenced Mr. McMullin to prison for the agreed 20-year period. The sentence is being served at a federal prison in Alabama.
 
 
 6
 After he entered the prison in Alabama, Mr. McMullin learned the identity of a person who had murdered a federal agent. Without contacting the office of the United States Attorney responsible for negotiating his plea agreement, Mr. McMullin provided information on the murder to the F.B.I. and later testified as a government witness in a federal murder trial conducted in the Eastern District of Tennessee. He also gave the authorities information about an escape plan and a drug smuggling problem at the Sevier County Jail.
 
 
 7
 Although made aware of Mr. McMullin's cooperation in the Eastern District, the assistant U.S. attorney who had prosecuted him in the Middle District declined to seek a reduction in sentence. Through counsel, Mr. McMullin then filed his motion for vacation of sentence pursuant to 28 U.S.C. § 2255. The district court denied the motion, and this appeal followed.
 
 II
 
 8
 Mr. McMullin claims a violation of his Fifth Amendment right against double jeopardy, based on the fact that prior to his conviction his property had been forfeited by reason of the same conduct at issue in the criminal proceeding. This claim has now been foreclosed by United States v. Ursery, 116 S.Ct. 2135, 2138 (1996), where the Supreme Court held that civil forfeitures do not constitute punishment for double jeopardy purposes.
 
 III
 
 9
 Rule 35(b), Fed.R.Crim.P., provides that a district court, on motion of the government, "may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense." An assistant U.S. attorney in the Eastern District of Tennessee believed that Mr. McMullin had provided substantial assistance in such an investigation/prosecution, and so advised the assistant U.S. attorney who had prosecuted Mr. McMullin in the Middle District. The latter, as we have seen, declined to move for a reduction in sentence.
 
 
 10
 In Wade v. United States, 504 U.S. 181 (1992), the Supreme Court held that constitutional limitations constrict the government's discretion to file a "substantial assistance" motion under 18 U.S.C. § 3553(e), a statute permitting imposition of a sentence below a statutorily mandated minimum. Federal district courts have authority to review a prosecutor's refusal to file such a motion, Wade teaches, and the courts have power to grant appropriate relief if they find that a refusal was based on an unconstitutional motive--race or religion, e.g.,--or was not rationally related to any legitimate government end. Under Wade, Mr. McMullin suggests, relief should likewise be granted if a prosecutor's refusal to file a substantial assistance motion under Rule 35(b) is based on an unconstitutional motive or is not rationally related to any legitimate end. The government does not deny that the rationale of Wade extends to Rule 35(b).
 
 
 11
 In the case at bar there has been no suggestion that the government refused to file a Rule 35(b) motion because the petitioner belongs to a suspect class or has exercised a constitutionally protected freedom. See United States v. Friedland, 879 F.Supp. 420, 428 (D.N.J.1995), aff'd, 83 F.3d 1531 (3d Cir.1996). Mr. McMullin contends, rather, that the prosecutor declined to file the motion because he "personally believes that Billy McMullin should serve every day of his sentence." Such a belief, in our view, does not rise to the level of an unconstitutional motive.
 
 
 12
 Mr. McMullin has not shown that the government's refusal to file a substantial assistance motion was unrelated to a legitimate government end. Here the government entered into a contract with Mr. McMullin expressly providing that no motion would be filed under Rule 35(b) for "correction" (a term we believe was intended to embrace "reduction") of the 20-year sentence. It was not irrational for the government to conclude that a man who had done what Mr. McMullin apparently did should be put away for an agreed time without any possibility of relief under Rule 35. Such a contract having been made, it was not irrational for the government to adhere to it. The government doubtless had the power to waive the provisions of the contract, but as far as we can see it had no constitutionally-based duty to do so.
 
 
 13
 AFFIRMED.