Brief Factual and Procedural Overview

CARROLL J. DeCOTEAU, Associate Justice.
Tribal Police Officer Frank Martell received a report from his dispatch regarding a vehicular incident wherein a red pick-up nearing collided with another vehicle. Office Martell was dispatched to the scene and took a verbal report from Valerie Chaser, the driver of the other vehicle. Valerie identified the driver of the red pick up as Linda Melbourne. Valerie was given a report form to complete and Officer Martell indicated he would attempt to locate the red pick up. Approximately an hour and a half later, Officer Martell observed Linda Melbourne pulling into her drive way on Court Ave, Poplar, MT. The officer observed the driver of the pick up and identified her as Linda Melbourne. He also observed two (2) passengers. *320 Upon approaching the pick up, Officer Martell observed Linda sitting in the driver’s seat and detected the odor of alcohol on Linda’s breath. He asked Linda whether she had been drinking and she stated that she had consumed about “4 beers”. He then administered three (3) field sobriety tests, all of which she failed. Upon failing the tests, Officer Martell arrested Linda, charging her with a violation of Title XVII CCOJ 2000 § 107 (formerly Title IX CCOJ § 107), commonly referred to as driving under the influence or DUI. Linda entered a plea of not guilty at her arraignment.
Linda failed to appear at a scheduled jury trial date on June 9,1999 and the tribal prosecutor filed Criminal Contempt charges (Title VII CCOJ 2000 § 426(b»(formerly Title III CCOJ § 410) on the same day. The trial was rescheduled for November 12,1999. On November 12,1999, a jury found Linda guilty of both charges. The Tribal Court, Judge Marvin Youpee presiding, sentenced Linda to two (2) days flat, twenty-five (25) days or a $250.00 fine, plus $25.00 to be assessed for the ambulance fund, for the DUI and five (5) days flat, suspended for a period of thirty (30) days, and placed on probation for those same thirty (30) days, for the Criminal Contempt. Upon receiving her sentence, Linda immediately moved for a stay of sentence pending the filing of an appeal. The Tribal Court granted her three (3) days to file her appeal and Linda filed a timely appeal on November 17, 1999. Concurrent with her Notice of Appeal, Linda requested a stay from this Court, which was granted on November 23,1999.

Issues Presented

The appellant requests that this Court review the following issues:
Whether it was prejudicial error for the Tribal Court to allow the defense to object to videotape evidence in the presence of the jury?
Whether the Fort Peck Tribes failed to meet its burden of proof by failing to prove each element of the DUI offense, and further, failed to present evidence to rebut exculpatory evidence presented by the defense?
Whether the Tribal Court violated defendant’s protective rights against ‘double jeopardy’ by imposing multiple fines for the same offense?
Whether the Fort Peck Tribes failed to present sufficient evidence to support the conviction for Criminal Contempt?
The appellant also requests clarification of the CCOJ concerning the application for a stay of sentence, thus posing the following question:
Whether the application for a stay of judgment, to any court, automatically stays that judgment until the reviewing court makes its ruling on the stay?

Discussion

Whether it was prejudicial error for the Tribal Court to allow the defense to object to videotape evidence in the presence of the jury?
The defense objected to the introduction of a videotape made at the time of the arrest, arguing that the prosecution had failed to establish the proper foundation needed to introduce the tape into evidence and that a correct chain of evidence could not be established. The Tribal Court ultimately agreed with the defense and did not admit the videotape into evidence. Defendant argues that the very fact that she was forced to object to this evidence in the presence of the jury tainted the jury *321 against her and resulted m error. We disagree.
As a general practice the Tribal Court hears suppression motions before the start of any trial. However in this instance, the ‘suppression’ was not in the form of a motion but an objection in open court, well after the trial had begun.
In a situation such as this, the defense must assume the responsibility to safeguard against any evidence, which might be prejudicial to its case. Thus, if the defense felt that its objection, and the oral arguments that followed, could possibly have prejudiced the jury, there were abundant opportunities to either avoid or ameliorate the situation. In the first instance, assuming that the defense knew of the videotape before trial, the proper procedure would have been to file a motion in limine. If the defense failed to file a motion in limine or if the evidence surprised the defense, it could have asked for a recess and then requested that the objection be heard out of the presence of the jury. Failing that, the defense, before the close of evidence, could have requested an instruction to the jury from the Tribal Court. (See Fed. R.Crim. Proc. R 30[1]). After failing to take advantage of these opportunities, defendant now contends that it was the duty of the Tribal Court to prevent any and all prejudicial evidence. Although our Tribal Court bears great responsibility and discretion in preventing prejudicial errors, and must be vigilant in protecting the right of all litigants, we do not raise that standard to the point of clairvoyance. The Court could not have known the nature of the defense’s objection and it did not err by allowing oral arguments on defendant’s objection, even in the presence of the jury.
Finally, even if it were shown that the Tribal Court committed error, the burden would have shifted to the defendant to show such error affected her substantial rights, (See Fed. R.Crim. Proc. R 52[2]) Whether the Fort Peck Tribes failed to meet its burden of proof by failing to prove each element of the DUI offense, and further, did the Tribes fail to present evidence to rebut exculpatory evidence presented by the defense?
Title XVII CCOJ 2000 § 107 reads, in part:

Sec. 107. Driving a motor vehicle while under the inftuence of intoxicating liquor or drugs.

(a) It is unlawful and punishable for any person who is under the influence of intoxicating liquors, under the influence of any drug, or under the combined influence of alcohol and any drag, to a degree which renders him/her incapable of safely driving a motor vehicle to *322 operate or be in actual physical control of any motor vehicle upon the highways or roads of the Reservation.
(emphasis on elements added)
(b) In any criminal prosecution for a violation of paragraph (a) of this Section relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant’s blood at the time alleged as shown by chemical analysis of the defendant’s blood, urine, breath or other bodily substance, shall give rise to the following presumptions:
... (Various sub-sections follow specifying the varying amounts of blood alcohol required for a presumption to be raised.) (5) In addition to the results of chemical analysis as set forth in paragraph (b), other competent evidence may be introduced on the question of whether the defendant was under the influence of intoxicating liquor.
Title VII CCOJ 2000 § 104 provides:
Burden of proof.
(a) The Tribes have the burden of proving each element of an offense beyond a reasonable doubt.
(b) Whenever the defendant introduces sufficient evidence of a defense to support a reasonable belief as to the existence of that defense, the Tribes have the burden of disproving such defense beyond a reasonable doubt, unless this Code or another ordinance expressly requires the defendant to prove the defense by a preponderance of evidence.
The Tribes relied on the testimony of two witnesses, Officer Martell and Valerie Chaser. Valerie made the initial complaint, testifying that she was almost struck by a red pickup driven in a reckless manner and she identified the driver as Linda Melbourne.[3] Officer Martell testified that he saw Linda driving the red pickup and that he pulled up behind her as she was pulling into her driveway; that he subsequently smelled alcohol on the Linda’s breath; that she was in the driver’s seat when he approached the car and that Linda admitted to having four (4) beers. He testified extensively concerning the three separate field sobriety tests that he administered to Linda and that she failed each and every one of them. He further testified that after administering the sobriety tests to Linda, he determined that she could not safely operate a motor vehicle. He then arrested her for a violation of § 107. Linda later refused to take a breath analysis test, which could have seived to rebut the Officer’s conclusions:[4]
In a similar case, where the defendant contended that the prosecution failed to carry its burden in proving all the elements, this Court reversed a judgment of guilty. Tribes v. Jones FPCOA # 148 (1992). In Jones, the Officer received a report of a “white car’ having run a school bus off the road earlier in the evening and he testified that he was informed that the defendant had a car matching that description. The Officer proceeded to the defendant’s residence and found Mr. Jones passed out in the front seat of his car. After determining that Mr. Jones was ‘under the influence’ the Officer arrested him for a violation of the DUI statute. Inasmuch as there was no evidence whatsoever that Mr. Jones was the driver of the “white car’, which ran the school bus off the road, this Court reversed. The critical difference in the case at bench is the fact that Linda was identified as the driver of the red pickup that nearly collided with the complaining witness. Additionally, the ar *323 resting Officer actually saw Linda driving the red pickup.
At trial, Linda offered testimony that she was not driving at all, but rather, the driver was Marlene Failing, Linda’s sixteen-year-old daughter. Marlene testified that she had used the red pickup most of the day and that prior to the arrest she had picked up her mother. Under cross-examination, Marlene admitted that she did not have a driver’s license and acknowledged that it was against the law to drive a vehicle on public roadways without a license. However, Marlene insisted that she was the driver of the red pickup immediately prior to the stop by Officer Martell and she insisted that she exited the vehicle from the driver’s side in full view of Officer Martell. Marlene further testified that she observed Officer Martell administering the field sobriety tests to her mother. Marlene was the final witness at trial. Except for Marlene’s testimony at trial, the record is void of any evidence that either Linda or Marlene had ever stated that Marlene was the driver. Neither counsel asked Marlene why she failed to inform Officer Mar-tell that she was the driver, not Linda. Thus, the jury was left to ponder that question.
Inasmuch as neither Officer Martell, nor Valerie Chaser, were recalled for rebuttal, Linda contends that the prosecution failed to rebut exculpatory evidence. Linda fails to cite any authority to support this contention, thus we are at a loss as to any supporting legal authority. We could assume that she is referring to Title VII CCOJ 2000 § 104f(b), quoted supra, or we could assume that Linda is referring to Title VI CCOJ 2000 § S06 (el. which provides: “The prosecution shall present its case first, followed by the case of the defendant. If rebuttal is required, the prosecution shall proceed first, followed by the defendant.”) (our emphasis) However, neither of these sections, nor any other CCOJ section to our knowledge, requires the prosecution to offer rebuttal testimony when testimony already exists, which contradicts a given defense. Linda fails to acknowledge that the prosecution had already presented two witnesses, both offering consistent testimony, which contradicted Marlene’s testimony. Such contradictory testimony is commonplace in a trial and the resolution as to which side is telling the truth is within the exclusive province of the jury. From the verdict of guilty, it is obvious that the jury did not believe Marlene and accepted the testimony of Officer Martell and Valerie Chaser.
We find that the prosecution did meet its burden by offering evidence to support each element contained in § 107. We further find that no rebuttal testimony was necessary inasmuch as the prosecutor had, in his case in chief, presented evidence that contradicted Marlene’s exculpatory testimony. It wras then up to the jury to decide the credibility of the witnesses and to resolve the issue of truth.
Whether the Tribal Court violated defendant’s protective rights against ‘double jeopardy’ by imposing multiple fines for the same offense?
We note at the outset that the double jeopardy clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. U.S. v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Defendant apparently contends that the Tribal Court was guilty of the latter abuse. The Halper court unanimously held that ‘a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can be explained only as also serving either retributive or deterrent purposes, is punishment for purposes *324 of the double jeopardy clause of the Federal Constitution’s Fifth Amendment’.
Several years after Halper, the U.S. Supreme Court, reversed two separate opinions from the Sixth and the Ninth Circuits, holding that in rem “civil'forfeitures” do not violate the double jeopardy clause:
“In sum, nothing in Halper, Kurth Ranch, or Austin purported to replace our traditional understanding that civil forfeiture does not constitute punishment for the purpose of the Double Jeopardy Clause...U.S. v. Ursery 518 U.S. 267, 287, 518 U.S. 267, 116 S.Ct. 2135, 2147, 135 L.Ed.2d 549 (1996)
To comport with the Ursery and Halper holdings, it is necessary to determine whether the ‘civil penalty’ was imposed solely for a remedial purpose or whether it served ‘retributive or deterrent purposes’. In the instant case we need not perform such analysis because the Tribal Court erred in imposing the fine in the first instance.
In pronouncing the sentence, Judge Youpee stated; “For this DUI, the Court will assess the penalty consistent with first time offenders. That sentence will be two (2) days flat. In addition to that two (2) days you will ... do an additional twenty-five (25) days or pay a two hundred and fifty ($250.00) dollar fine, and in addition to that, there will be a twenty-five ($25.00) dollar fine which goes to the Emergency Services fund or the Ambulance fund.’[5]
Title YI CCOJ 2000 § 601(d) states:
In addition to or in lieu of the penalties provided above, the Court may require a convicted offender who has inflicted injury upon the person or property of another to make restitution or compensation to the injured person by means of the surrender of property, payment of money damages, or the performance of any other act, including appropriate work detail, for the benefit of the injured party. (Our emphasis.)
It is clear that the Tribal Court was required to find that the defendant “inflicted injury upon the person or property of another” before ordering the “$25.00 ... fine.” Nothing in the record would suggest that this requirement was met. Thus, that portion requiring the defendant to pay the “twenty-five ($25.00) dollar fine ...” must be set aside. In guiding our Tribal Court, we note that an appropriate sentence may have been; “two (2) days flat time, with an additional twenty-five days, or a $250.00 fine. Further, should the defendant opt to pay the fine in lieu of the jail time, $25.00 of that fine shall be assigned to the Ambulance fund”.
Did the Fort Peck Tribes fail to present sufficient evidence to support a conviction for Criminal Contempt?
As we discussed previously, the Tribes have the burden of proving guilt beyond a reasonable doubt. Here the Tribes must prove that the defendant received proper notice of the time and place the trial was to held, and that the defendant failed to appear as ordered. The Tribes contend that the defendant was served twice, at her arraignment February 16,1999, and again on April 30,1999 by Officer Bets His Medicine, to appear for her jury trial June 9, 1999 in the Poplar Tribal Court.
The Tribes again relied on the testimony of Valerie Chaser and Officer Mar-tell. Both testified that they were properly served and appeared as ordered on June 9, 1999 at 9:00 a.m. Both testified that the reason the trial was not held was that the defendant failed to show. The Tribes *325 went on to present evidence that both witnesses were properly summonsed to appear at the June 9th trial. However, the Tribes failed to present any evidence to the Court showing that the defendant was properly served. Clearly, the Tribes failed in their attempt to prove the Criminal Contempt charge beyond a reasonable doubt.
Clarification of Title II CCOJ 2000 § 205(c). The defendant asks the question, “Does an application for a stay in any Tribal Court (Trial Court or Court of Appeals) temporarily stay an order?”
Section 205(c) states
“Unless the Court stays an order pursuant to Section 206(e) or Section 207(e) of this Title, all final orders of the Court shall be carried out while appeals are pending. An application for a stay of an order shall temporarily stay the order.” (Our emphasis)
RULE 5 of the Fort Peck Court of Appeals Rules of Procedure states:

Stay or Injunction Pending Appeal

Application for a stay of the judgment or order of the Tribal Court pending appeal, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal must be made in the first instance in the Tribal Court. A motion for such relief may be made to the Court of Appeals, however, the motion shall show that application to the Tribal Court for the relief sought has been denied, or that the Tribal Court had failed to afford the relief which the applicant requested, within a reasonable period of time. The motion shall also show the reason or the relief requested and the facts relied upon, and if the facts are subject to dispute the motion shall be supported by affidavits or other sworn statements or copies thereof. With the motion shall be filed such parts of the record as are relevant. The motion shall be filed with the Clerk of the Court of Appeals and normally will be considered en banc by the Court of Appeals, however, the application may be decided by any two Justices of the Court.
Inasmuch as the Court of Appeals will not take action on an application for a stay unless it has first been presented to the Tribal Court, and because the Tribal Court has that first opportunity to take action on the application for a stay, § 205(c) applies only to the Tribal Court. To do otherwise would unnecessarily grant the appellant an additional ‘application’ and extra time not contemplated by our code.

Conclusion

The Fort Peck Tribes presented sufficient evidence to the jury to carry its burden of proof beyond a reasonable doubt for the conviction of DUI. However, the Tribes failed to carry that same burden as a matter of law for the comiction of Criminal Contempt. Accordingly, the conviction for DUI is affirmed and the conviction for Criminal Contempt is vacated.
We also find that the $25.00 fine for the ambulance fund was not in compliance with § 601(d) and is set aside.
Concur: GARY M. BEAUDRY, Associate Justice, and GARY P. SULLIVAN, Chief Justice.

. Rule 30. Instructions At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to all parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The court may instruct the jury before or after the arguments are completed or at both times. No party may assign as error any portion of the charge or omission here from unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

. Rule 52. Harmless Error and Plain Error, (a) Harmless error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded, (b) Plain error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

. Compiled from Valerie Chaser's affidavit and testimony, Trial Transcript pages 24-36.

. Compiled from Officer Martell’s testimony, Trial Transcript pages 37-74,

. November 12,1999 sentencing hearing, transcript page 11.