IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2022

## JOHN MEYER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sumner County**
**No. 2020-CR-132     Dee David Gay, Judge**

---

### No. M2021-00712-CCA-R3-PC

---

The petitioner, John Meyer, appeals the denial of his petition for post-conviction relief, which petition challenged his conviction of theft of property valued at $1,000 or less, alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and J. ROSS DYER, JJ., joined.

Lee W. McDougal, Gallatin, Tennessee, for the appellant, John Meyer.

Herbert H. Slatery III, Attorney General and Reporter; Richard D. Douglas, Assistant Attorney General; Ray Whitley, District Attorney General; and C. Ronald Blanton, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Sumner County Grand Jury charged the petitioner with one count of theft of property valued at $10,000 or more but less than $60,000 and two counts of theft of property valued at $1,000 or less for the 2017 thefts of TurboTax software from Walmart. *See State v. John Anthony Meyer, III*, No. M2019-00190-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Nashville, Feb. 10, 2020). Pursuant to a negotiated plea agreement, the petitioner pleaded guilty on May 17, 2018, to one count of theft of property valued at $1,000 or less for a sentence of 11 months and 29 days to be served at 75 percent release eligibility, and the State dismissed the remaining charges. *Id.*, slip op. at 1. The facts as presented by the State at the plea submission hearing are as follows:

[O]n March 12, 2017, at the Hendersonville Wal-Mart . . . [the petitioner] was on video removing TurboTax software from that facility [valued at] less than $1,000. This was part of . . . an overall scheme to take TurboTax. When [the petitioner] was arrested, there was over $10,000 worth of TurboTax software located in the vehicle he was driving at the time, and that was confiscated and returned back to Wal-Mart.

In January 2019, the pro se petitioner filed a pleading styled "Motion/Petition to Modify/Vacate Sentence," in which he alleged that he did not enter his guilty plea knowingly and voluntarily because he had served more of his sentence than he believed he would be required to serve and because he was unaware that the trial court would order him to forfeit $8,000 as part of his sentence. The trial court appointed counsel but summarily dismissed the petition on the ground that it lacked jurisdiction. *Id.*, slip op. at 3. On appeal, this court deemed the petition to be a "timely petition for post-conviction relief" and remanded the case for post-conviction proceedings. *Id.*, slip op. at 4-5.

On remand and with the assistance of counsel, the petitioner filed a petition for post-conviction relief, arguing that the forfeiture of $8,000 of seized cash was not part of his plea agreement and seeking specific performance by the State by eliminating the forfeiture requirement from the judgment.[1]

At the April 2021 evidentiary hearing, the petitioner testified that when he pleaded guilty, he understood that he was agreeing to a sentence of 11 months and 29 days to be served at 75 percent. He acknowledged that at the time of the hearing, he had completed that sentence. He said that in plea discussions with trial counsel, he told counsel that he would not forfeit $8,000 that was seized from him at the time of his arrest "because . . . it belonged to my brother. I can't give away his money." He said that when he initially appeared for a plea submission hearing, trial counsel's son, also an attorney, appeared on behalf of trial counsel, but the proceeding was continued after the petitioner refused to sign an agreement that included the forfeiture. He said that at the next plea submission hearing, "we didn't talk about" the forfeiture of the money and that before he signed the plea agreement, he "specially looked" to ensure that it did not include the forfeiture. He did not learn that the court had ordered the forfeiture until he received his judgment form "about a week after I was in jail." He said that although the judgment was file stamped the same day as the plea agreement, he did not see it until he received it in the mail. Under "Special Conditions," the judgment said, "FORFEIT SEIZED $8,000 TO THE GALLATIN POLICE DEPARTMENT." After receiving the judgment form, the petitioner spoke with trial counsel, and counsel told him "that he could get the $8,000 back to my brother," but,

---

[1] The petitioner abandoned his claim related to the length of service of his sentence, acknowledging that the issue was moot upon completion of his sentence.

-2-

the petitioner did not know whether his brother had been in touch with trial counsel. He said that had he known that he would be ordered to forfeit the money, he would have rejected the plea agreement.

Two plea agreements were exhibited to the petitioner's testimony. The first bore his signature, a file stamp by the circuit court at 10:00 a.m. on May 17, 2018, and a preprinted general forfeiture clause that read: "I forfeit any and all interest in all property taken by any law enforcement agency. I agree such property is forfeited to the seizing agency." The post-conviction court described the second exhibit as having been also "filed at 10:00 A.M. on May 17" and "signed by [trial counsel]" but noted that it "mentioned forfeiture of the cash seized."[2]

Upon questioning by the court, the petitioner said that because he had told counsel that he would not agree to forfeit the money and because counsel "didn't mention it" at the plea submission hearing, he assumed that the forfeiture was not part of the plea agreement.

Trial counsel testified that in negotiating a plea agreement with the State "[w]e discussed" the forfeiture issue "back and forth." He said that he "assumed that that was probably part of our agreement. That obviously was not on the plea form, but I know [the State] and I discussed the seizure of money and I discussed it with [the petitioner]." Counsel could not recall whether he told the petitioner that "the money would be forfeited or not that particular day" but said, "I do know I didn't tell him he was going to get the money back because he had always told me it was not his money." He said that he explained to the petitioner that because the money was not his, "even if you do give it up in a plea agreement, you can't give up something that doesn't belong to you. So the rightful owner could always come forward and try to . . . get the money back, perhaps." Counsel did not recall being contacted by the petitioner's brother and said that if he had been, he would have notified the State of the rightful owner of the money.

Trial counsel said that before the plea submission hearing, he "filled out a plea agreement," "went over it with [the petitioner]," "he signed it and we turned it in." He said that his "normal course is to go back and make five copies. I generally give one to the district attorney, one to my client, I keep one, and the original . . . one goes to the Court, and if probation is involved, one goes to probation."

During cross-examination, trial counsel said that he did not recall whether his son had represented the petitioner at an initial plea submission hearing but

_____

[2]      Exhibit 2 in the record does not appear to be the same document reviewed by the post-conviction court. The exhibit in the record does not bear a file stamp by the circuit court clerk and does not reference forfeiture of cash other than the same general preprinted forfeiture clause as exhibit 1.

acknowledged, "I don't have any doubt that that's true." He recalled his son mentioning that the hearing was continued because of the forfeiture issue. He could not recall whether he reviewed the petitioner's judgment when he received it, acknowledging that he did not ordinarily review judgments, saying, "I get the judgments. They go in the file. They generally reflect what the plea agreement was."

At the close of evidence, the post-conviction court found that "the underlying agreement was . . . that this $8,000 would be forfeited" and that the money did not belong to the petitioner. The court accredited trial counsel's testimony over that of the petitioner, finding that counsel believed the forfeiture to be a part of the plea agreement and that counsel "told the [petitioner] that he wouldn't get his money back." The court concluded that the petitioner entered his guilty plea knowingly and voluntarily and that he had failed to show that counsel performed deficiently. The post-conviction court memorialized its findings in a written order denying post-conviction relief.

In this timely appeal, the petitioner reasserts that his guilty plea was not knowing and voluntary because he did not know that he would be ordered to forfeit the $8,000. Implicit in his argument is that he was deprived of the effective assistance of counsel. The State argues that the petitioner is not entitled to post-conviction relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process" by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because '[t]he due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (alteration in original) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (alterations in original) (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

Here, the petitioner has failed to establish any deficient performance by trial counsel. Counsel's accredited testimony established that he told the petitioner that he would not recover the $8,000 and that because the money did not belong to the petitioner, the rightful owner could claim it despite a forfeiture. Additionally, the plea agreement signed by the petitioner, and the one that he claims established the terms of the agreement, clearly stated that the petitioner agreed to "forfeit any and all interest in all property taken

by any law enforcement agency." That the agreement did not list the $8,000 cash as an item of property does not exempt it from the forfeiture clause. This evidence establishes that the petitioner knew that the money would be forfeited upon his conviction.

Even if we were to accept that the petitioner did not know that he would be ordered to forfeit the money as part of his plea, he is not entitled to relief. The post-conviction court found, and, indeed, the petitioner testified, that the $8,000 at issue did not belong to him. Thus, the forfeiture resulted in no loss to the petitioner and cannot plausibly be considered part of the petitioner's punishment. To be sure, forfeitures can be punitive. *See Austin v. United States*, 509 U.S. 602, 618 (1993) (concluding that "forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment" for the purpose of the Eight Amendment). *But see United States v. Ursery*, 518 U.S. 267 (1996) (stating that "civil forfeiture is a remedial civil sanction . . . and does not constitute a punishment" for the purpose of double jeopardy). In this case, however, the forfeiture added nothing to the petitioner's sentence because he was not the owner of the money. Consequently, his ignorance of the forfeiture before he signed the plea agreement does not invalidate his plea. *See Ward v. State*, 315 S.W.3d 461, 472 (Tenn. 2010) (a court's failure to advise a defendant of the collateral, non-punitive consequences of his guilty plea do not render the plea invalid).

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-6-